### Sargent *vs.* Stark.

The erection of a dam, with the usual waste gates, by an owner of a mill privilege, by which he is enabled to flow back water higher than he had any right to do, furnishes no ground of action against him, or any agents engaged in superintending the erection of such dam.

It is the subsequent control and management of the water, by means of the dam, that renders the owner or his agents liable for damage.

The lessor of such property is not liable for any mismanagement of it by the lessee.

Case, for damage in flowing a portion of the plaintiff's woodland, from April 7th, 1836, to the date of the writ, May 4th, 1839. Plea, the general issue.

The declaration alleged that the defendant, on the first of

October, 1834, had erected and built a dam, higher than he was legally entitled to do, and by means of the dam, thus erected, caused the water to flow back upon the plaintiff's land, to his great damage and injury.

Upon the trial it appeared in evidence that in 1834, Caleb Stark, the father of the defendant, was the owner of a farm in Dunbarton, on which was an old mill, and in that year the mill and dam were rebuilt. The defendant lived there at the time, and afterwards, and employed hands in building the dam ; but Caleb, senior, was residing on the farm when the work commenced, and gave directions respecting it so long as he remained there. Before the dam was completed Caleb, senior, went to Ohio, and the defendant superintended the completion of it, and caused the channel of another brook, which formerly fell into the mill brook a short distance below the dam, to be turned, so that it emptied into the mill-pond. The dam was made of the same height as the former dam, but was made tighter, so that it would hold the water much longer. Caleb, senior, when he returned, approved of it. He resided in Ohio part of the time, and the defendant held a power-of-attorney from him, dated October 28, 1830, authorizing him, for the term of five years, to manage and transact all business for him during his absence from Dunbarton, and to collect and receive moneys, dispose of personal estate, &c.

After the mill was completed it was leased to one Nathan Gutterson, from year to year, on shares. The defendant, as attorney for said Caleb, made the bargains with Gutterson, and Gutterson accounted to him as agent, during the life of Caleb, senior, who died August 26, 1838, after which Gutterson accounted with the administrator.

The defendant did not make any agreement respecting the height of the water, or give any directions respecting it. He has worked some in the mill at different times, but did not manage the dam or control the water.

On the 7th of April, 1836, the plaintiff purchased the wood-

land in question, which is situated above the dam. The water has been flowed back upon it, and kept there by means of the new dam longer than was formerly the case—the dam being tighter, and the plaintiff's wood growing upon the land has thereby been killed.

The defendant objected, that he had acted lawfully as the agent of another in building the dam, and leasing the mill, and that he was not answerable for the flowing of the plaintiff's land.

A verdict was taken for the plaintiff, by consent, subject to the opinion of the court upon the case.

*Peaslee,* (with whom was *Bell,*) for the defendant. On the matter charged and facts found in this case, no action will lie against this defendant. He was the mere agent of his father, Caleb Stark, senior, in the erection of the dam, which was subsequently so used and controlled as to cause the injury complained of. The defendant neither erected the dam himself, or continued the erection, in the sense of the law, as applicable to this subject.

As agent, he leased the mills for his father; but the lease was the lease of the father, and the defendant is not responsible for any acts done by the lessee under it.

*Perley,* (with whom was *Bartlett,*) for the plaintiff. The plaintiff has suffered a wrong; he submitted to a certain usage of flowing during a portion of the year; but a greater right is now claimed, causing increased damage to the plaintiff.

The fact that the dam is not built higher than before, is immaterial. The only question is as to the height to which it flows, and whether, owing to its more perfect construction, increased damage is occasioned by it.

All persons engaged in building the dam are guilty of wrongful acts. They must be regarded as contemplating the injury which has since been caused by its erection. The defendant superintended the building of the dam; and the gen-

Sargent *v.* Stark.

eral principle prevails here, that, where a wrongful act is done, all parties engaged in it must be holden responsible for the consequences.

UPHAM, J. It is quite clear, from the facts stated in this case, that the plaintiff's land has been wrongfully flowed; and the only question for consideration is, whether the defendant is to be holden responsible for it.

This depends on the effect of the acts done by him. Did those acts in any manner occasion the injury complained of? The defendant contends that they did not, and that he has done nothing from which any injury to the plaintiff would necessarily result. What were those acts?

It appears that a mill and dam, owned by Caleb Stark, senior, in Dunbarton, was out of repair in 1834, and that the defendant, as the servant of Stark, employed hands, and in part superintended the erection of a new dam on the site of the old one; and that, after the completion of the dam, he leased the mill in the name, and as the agent and attorney of Stark, to one Nathan Gutterson, from year to year.

There can be no doubt that Stark had a right to build a dam on his own land, of such model and dimensions as he pleased, unless it was so constructed as *necessarily* to affect the right of his neighbors by overflowing the land above, or by obstructing improperly the passage of water to the land below.

If it was a permanent obstruction, without waste-gates, or any other means by which the water might be regulated under the control of its owner, so as to prevent injuries to other land owners, it might perhaps render all concerned in its construction liable; but nothing of that kind is pretended in this case. The new dam was of the same height as the former one, and varied from it only in being tighter. It was constructed for the purpose of turning ordinary mill machinery; and, for aught that appears, the owner had full command and control of the water, by the usual waste gates and other means for its regulation.

The mere erection of the dam did no injury. It was its management after its erection of which the plaintiff only could rightfully complain.

We infer from the case that the proprietor of the mills was restricted as to flowage only during a portion of the year. If so, it was only necessary that the water should be properly drawn down during that portion of the year in which his right was limited in this respect. At all events, it is the neglect of the proper control and management of the water, and keeping it within its legal limits, that prejudices the plaintiff, and not the erection of the dam.

The case finds that the defendant had no control or management of the water, but merely leased the mills, from year to year, in the name of Caleb Stark, senior, and as his agent and attorney, and for his sole benefit; and that he made no agreement respecting the height of the water, or gave any directions in relation to it.

It will hardly be pretended that the lessor of the mills would be liable for the mismanagement of the water by the lessee. It is quite clear that his mere agent, or attorney, for executing the lease, could not be so holden. Those only can be rendered liable, under the circumstances of this case, who were so managing and controlling the water as to cause the injury. The case of *Hill* vs. *Caverly & als.,* 7 *N. H. Rep.* 215, has an important bearing on the point in question; and, as far as it is applicable, confirms the views of the court as now entertained. No wrongful act is shown by the defendant. The verdict must, therefore, be set aside, and the case transferred for a new trial.

*New trial granted.*