## CURTICE *v.* THOMPSON *&* *a.*

Evidence that a party, by making a dam higher or tighter than it had been, caused the water to flow the plaintiff's land to a greater height than before, is admissible in an action on the case, for maintaining and keeping up a dam.

The party erecting or otherwise causing such a nuisance is not exonerated by conveying the land to another, from damages arising therefrom after the conveyance.

The party who, by means of such alterations in the dam, causes the wrongful flowing, is not entitled to notice to abate, before action brought.

CASE, for that the defendants, from Oct. 1, 1840, to the date of the writ, Oct. 21, 1846, "maintained, kept up and continued a mill-dam in Danbury, across Bog brook," and by means thereof caused the plaintiff's land to be overflowed, &c.

The case was tried upon the general issue.

It appeared that a mill-dam had been kept up and maintained at the site of the defendant's dam ever since the year 1812, and it was not disputed that a right had been acquired by long use and acquiescence, to maintain a dam of some kind. The defendants purchased the mill and dam, July 18, 1842, and in 1843 repaired the dam, and the plaintiff contended that, by reason of said dam being made higher or tighter, or both higher and tighter than before, by the defendants themselves, the plaintiff's land was flowed beyond what it had been, and beyond the right of the defendants, and this was the principal matter submitted to the jury. The defendants objected that this evidence was not admissible under the allegation in the declaration, but it was admitted, subject to the exception.

The tendency of the evidence was to show that the increased flowing of the plaintiff's land commenced in the spring or fall of 1844, but at what particular time in that year, did not distinctly appear.

The defendants offered evidence to show that in March, 1844, they agreed by parol to sell the mill and dam to one

Nathan Leeds, for $1000, and that Leeds took possession of the mill and dam, under the contract, from the 10th to the 15th of March, 1844, and kept possession till he sold it, and exercised full management and control over the water at the dam, as he liked, and the defendants never interfered in any way or said any thing to him about it.

The deed from the defendants to Leeds, in final execution of the contract, was dated June 30, 1844. There was also in evidence a deed from said Thompson and Nichols to said Leeds, dated July 29, 1845. Both of said deeds reserving to the defendants certain rights to draw water from the dam and to repair when necessary.

The defendants contended that there was no increased flowing of the plaintiff's land till after Leeds took possession and control of the water and dam, nor till after the deed to him, and that they were not responsible for the flowing after Leeds took possession, or after the deeds to him.

The court instructed the jury that the defendants having purchased the premises, with a dam then erected, they had a right to maintain the dam, until requested to remove it, although it flowed more land than could lawfully be done, and that until such request, they might repair and rebuild the dam, when necessary, provided its character as to flowing land was not substantially changed; that the jury would inquire and determine whether the defendants, in their repairs, made the dam higher or tighter than the dam formerly existing, and upon the premises when they purchased, and so as to cause more of the plaintiff's land to be flowed than was flowed by the old dam in the same state of repair, and if they found the defendants had made such alterations in the dam, they were liable to the plaintiff for the damage resulting from such increased flowage, and that the contract and sale to Leeds, and possession by him, as above stated, did not exonerate them from liability, but their liability continued to the date of the writ, and that the defendants, in such case, were liable without any notice or request from

the plaintiff to draw down the water or to remove the dam; to all which the defendants except.

The jury having returned a verdict for the plaintiff, the defendants moved to set the same aside, for misdirection and for the improper admission of testimony.

*Perley*, for the plaintiff.

1. *Plummer* v. *Harper*, 3 N. H. Rep. 88, is to the point, that where the defendant built a dam, he is liable for any damage resulting from the continuance of the dam, even after he has conveyed the land on which it stood. But in this case, the defendants, in both their conveyances to Leeds, reserved rights in the dam and water-power created by it, which required the dam to be kept up for their benefit, so that the dam was kept up under a contract with them, and for their use as well as for the use of Leeds. And the rights of the parties under the deed of July 29, 1845, are defined and regulated by the height of the dam as it then stood. Leeds was bound to keep the dam in repair, and if he failed, the defendants had the right to enter and repair themselves. The defendants and Leeds are, under these conveyances, joint owners of the dam and water-power, and the dam is kept up for their joint and common use. The dam being kept up and maintained under a contract with the defendants, for their benefit, is in law kept up by them.

2. The other question we supposed to be settled by *Alfred Bunker* v. *Abram Bunker*, decided at Ossipee, July, 1847.

*Pike*, for the defendants.

1. The plaintiff cannot show, under the allegation that the defendants have " maintained, kept up and continued a dam," &c., that they have maintained, kept up and continued a dam higher and tighter than they had a right to do. This is decided adversely to the defendants, in *Bunker* v. *Bunker*, decided at Ossipee, July, 1847.

2. The defendants cannot be made liable for the acts of.

Leeds, after they parted with their title to the dam and premises, and ceased to exercise any control over the dam and water. *Blunt* v. *Aiken,* 15 Wend. 522.

It is determined in *Blunt* v. *Aiken,* that an action on the case, for the flowing of lands, will not lie against a former owner of lands, who erected a dam and built a mill, by means of which the injury was done, when it appears that other persons are in possession of the premises, occupying them as their own, and there is no evidence that they hold as tenants of such former owner. The action must be against the person in possession. Leeds was not the tenant of the defendants.

The case does not find that there was any increased flowage while the defendants were in possession or while they were owners. No injury was done or flowage caused by the defendants to the plaintiff's lands.

3. At least, the defendants are not liable, after they ceased to control the water and dam, and had parted with their title to the same, unless it be shown that they flowed the plaintiff's land before that time, and were the authors of the nuisance.

The erection of a dam merely, provided it did not cause the water to flow back, could not injure the plaintiff. The defendants had the right to erect a dam, or repair an old one, never so tight or high, unless, by it, they caused an increased flowage of the plaintiff's land. The dam would be no nuisance to the plaintiff. It is the management of the dam, after its erection, of which the plaintiff can rightfully complain. *Sargent* v. *Stark,* 12 N. H. Rep. 332.

In the case of a nuisance, the damage is the gist of the action. Angell on Water Courses 159; case of the farms of the *Hamstead Water-works,* 12 Mod. Rep. 519. If there be no damage, there can be no nuisance, and consequently no action can lie. A private nuisance is defined to be any thing done to the hurt or annoyance of the lands, tenements or hereditaments of another. 3 Black. Com. 216

It is the hurt or annoyance of the lands of another which constitutes the nuisance. When the management of the dam causes a damage or hurt, by flowage, to the lands of another, then the dam becomes a nuisance to the person whose lands are flowed, and not till then. There is no nuisance, unless there is a damage or hurt; and in the case of a mill-dam, the person who first uses the dam for the purpose of a wrongful flowage, is the author of the nuisance. No one can be the author of the nuisance, unless he does a damage or hurt. And every repetition of this damage or hurt is a continuance of the nuisance, or a new nuisance. *Staples* v. *Spring,* 10 Mass. 72; 1 Ld. Rayd. 370; Angell on Water Courses 150.

The dam is simply an instrument; it may be used to do harm, or it may not, according to the inclination of the user. The one who first uses this instrument wrongly, is the author of the injury.

The action of case itself is an illustration of our position. Case lies when the consequences of the act are injurious, and not the act itself. 1 Chitty on Pleading, (ed. 1811.) No action like this can lie for the act; the one who causes the consequences is the one liable to the action. Case is the present remedy for flowage. The act may be innocent, but the use of it may cause injurious consequences; and in the case of a mill-dam, the act is often innocent, and the injury is caused by the subsequent use of the dam, and these two things may be done by different persons.

I take it to be the rule, that the plaintiff must prove that there has been both a flowage of the land, and that the act of the defendants was the cause thereof. If the defendants erect a dam merely, and it does not cause an unlawful flowage, no action can lie against the defendants; or if the plaintiff's land is flowed injuriously, and the act of the defendants has not been the cause thereof, no action will lie against them. The injurious effect must accompany the act, and the latter be the cause of the former, or there can be no

action. Both are necessary to constitute the nuisance, and the defendants must have been so connected with both as to have been the author of them, or no action can lie against them.

The case does not find that there was a flowage of the plaintiff's land, till after the defendants parted with their title; no action, therefore, could be maintained against the defendants for any thing done by them up to that time. And as they are not the authors of the nuisance, they are not liable at all.

If a person erect a dam, and flow land he has no right to, he cannot alienate and exonerate himself. *Plummer* v. *Harper*, 3 N. H. Rep. 88. But the rule is otherwise, if the alienation is by release, merely, and precedes the doing any injury. *Sargent* v. *Stark*, 12 N. H. Rep. 332. This latter case is to the point, that the erection of a dam, with the usual water gates, by an owner of a mill privilege, by which he is enabled to flow back water higher than he has any right to do, furnishes no ground of action against him or any agent engaged in the erection of the dam. It is the subsequent control and management of the water, by means of the dam, that creates the liability.

This case is also to the point, that the lessor is not liable for any mismanagement of the lessee. And by a parity of reasoning, the grantors are not liable for the acts of their grantee.

The defendants did not make the dam a nuisance to the plaintiff's land, while they were owners, as in *Plummer* v. *Harper*. If they did build the dam higher and tighter than they had a right to use full of water, they always used it within their right.

The question then is, are the defendants to be made liable for the acts of a third person, who is neither servant nor agent, because they have done an act, the improper use of which, by another person, has caused an injury?

The reservations in the deeds can make no difference.

Nor the fact that the bargain of sale was not reduced to writing, at the time it was made, as the case finds no injury till after the deed of June 30th, 1844, was made. The case finds the said Leeds in possession, having the entire control, as owner, after March, 1844. The defendants merely reserve the right to do certain things and have certain rights, upon notice. They have not done these things, nor asked for the privilege to do them. They are neither joint owners nor tenants in common with Leeds. They are not bound to keep the dam in repair, or to aid in rebuilding.

There is a distinction between an exception and a reservation. The former is always a part of the thing granted; the latter something not *in esse*, but merely created or reserved. Co. Sett. 47 a; Shep. Touch. 80; 3 Wend. 635; *Cochecho Man. Co.* v. *Whittier*, 10 N. H. Rep. 360.

The defendants quitclaim the right of flowage, and simply reserve the right to do something under that right, upon notice. The reservation is not *in esse*, till some right is claimed by the defendants, under the deeds. Entire possession of the dam and premises is taken by Leeds, and no part under the control of the defendants.

The dam is not maintained and kept up by Leeds under a contract by him with the defendants so to do. He can let the dam go out of repair any time he wishes, and forfeit nothing. And in such case, all the defendants can do is to repair. They cannot compel Leeds to keep in repair the dam. Leeds cannot compel them to repair. Therefore they are not joint owners.

The defendants have no right to profits, and cannot, therefore, be tenants in common with Leeds. In law, Leeds is owner, to all intents and purposes, till some right is claimed by the defendants.

WOODS, J. A question is made in this case, whether the facts proved sustain the plaintiff's allegation, that the defendants maintained, kept up and continued the dam, and

thereby caused the plaintiff's land to be overflowed. The defendants purchased the mill and the dam in 1842, and had the right to maintain and keep it as they then found it. But in 1843 they repaired the dam, and so changed its character and construction as to cause the damage of which the plaintiff complains. His land was flowed beyond the point to which the defendants had any right to flow it by means of their dam. This is the substance of what is charged in the declaration, and fully sustains it. To this point was the case of *Bunker* v. *Bunker*, decided in Belknap, July term, 1847.

The defendants, however, say that having, as early as 1844, parted with their possession of the dam, and with all control of its waters, and conveyed, with certain reservations, their whole interest therein to other parties, who, from a day somewhat anterior to the conveyance, and until the commencement of the suit, exercised an undivided management and use of the premises, they are not responsible for the damage that ensued during the period named in the writ. But this question was examined in *Plumer* v. *Harper*, 3 N. H. Rep. 92, where it was held that the party who erects the nuisance, continues liable so long as it exists, although a like liability may have attached to other parties by becoming purchasers.

Without, therefore, laying any stress upon the reservations in the conveyances of these defendants to Leeds, as having the effect of making them partakers with him in the benefits of the nuisance, and partial procurers of the maintenance of it, we are bound by the very reasonable and well established doctrine of that case, to adjudge them liable in this action, as the original authors of the wrong.

The defendants further insist that, having purchased the land with the dam upon it, they are entitled to notice from the plaintiff of the injurious nature of the structure, and to a request from the complaining party for its removal, before they can be charged in an action for maintaining it. In

this they would be deemed to be perfectly correct, if the thing complained of were the same which they found upon the land at the time of their purchase. But such is not the fact. The gravamen is, that they maintained a dam whereby the plaintiff's land was flooded. Such was not the dam which their grantors erected or maintained, but the dam in its altered character, whether higher or tighter than the rightful structure which they purchased. As the authors of the nuisance, then, they have no right to any notice. They are liable upon the evidence, which charges them with having caused the nuisance, notice being required only to charge a purchaser by reason of having adopted it.

*Judgment on the verdict.*