*A new trial granted.*

---

## GILFORD *v.* THE WINNIPISEOGEE LAKE CO.

Merely maintaining a dam for twenty years does not give a prescriptive right to flow land as high as it can be flowed by that dam. To acquire such right, the water must be actually raised on the adjacent owner's land so often as to afford him reasonable notice, during the entire period of twenty years, that the right is being claimed against him.

In order to gain a prescriptive right of flowage, it is not enough that the adverse user has been coextensive with the wants of the party claiming the right. The acts of user must be of such a nature and of such frequency as to give reasonable notice to the land-owner that the right is being claimed against him.

CASE, by the town of Gilford against the Winnipiseogee Lake Cotton and Woolen Manufacturing Company, for flowing land on the shore of Lake Winnipiseogee, by means of a dam maintained at Lake Village, across the Winnipiseogee river, the outlet of the lake. The writ was dated August 7, 1866, and the plaintiffs claimed damages for flowage during the six years prior to that date. The defendants claimed that they had acquired the right by prescription to flow the plaintiffs' land as much as it had been flowed during those six years. They offered no evidence of any other right.

Prior to 1829, there had been a dam at Lake Village called the Folsom dam. In 1829, Batchelder and Lyford erected a new dam at the site of the old Folsom dam, three feet six inches higher than that

dam. There was evidence tending to show that, in 1846, the defend-
ants made alterations and repairs of the Batchelder and Lyford dam,
making it tighter, and perhaps higher, so that they were able to keep
the water at a greater height, and hold it back until a later period in
the summer than it had before been kept. There was evidence tend-
ing to show that, from 1847, the water was in fact kept higher, and
kept up later into the season, than it ever had been before; also, that
in 1851 the Batchelder and Lyford dam was built new; and that from
time to time, during the period from 1829 to the date of the writ,
changes were made in the machinery and mode of using the water at
Lake Village.

It was conceded by the defendants that the surplus waters in the
lake have been held as a reservoir, and have been drawn at the pleas-
ure of the defendants as required for use on the stream below, during
the time covered by the declaration.

It appeared that the Batchelder and Lyford dam of 1829, and the
new dam built in 1851 at Lake Village, were both constructed with
waste-ways and waste-gates for the flood water in times of high water
to run through and not over them. There was evidence tending to
show that, in the management of the water down to 1847, it was the
intention of the defendants to keep it usually and ordinarily at a point
a foot or more below the top of the dam, and that it was ordinarily so
kept. There was evidence tending to show that the Batchelder and
Lyford dam was once filled intentionally, after it was completed, in the
spring of 1830, in order to see how much it would flow, for the pur-
pose of settling damages with shore owners about Long bay, and pur-
chasing rights to flow. There was also evidence tending to show that
it was filled on two or three other occasions between that time and
1847, in times of high water, and that the defendants, on those occa-
sions, immediately removed planks from the waste-ways in order to
let the water pass off rapidly, and kept their dam in that condition
until the height of the water was reduced to the point above which it
was not their purpose to allow it to stand. The defendants claimed,
and their evidence tended to show, that in their management of the
water they were governed wholly by considerations of safety to their
property and their own convenience in its use, and paid no regard
whatever to the rights of land-owners, on the shore of the lake or Long
bay, which might be affected thereby; that they controlled the height
and operation of the water in the dam as they pleased against the
plaintiffs, and kept it at any height their need and convenience re-
quired and the state of the water permitted.

A very large amount of evidence was introduced on both sides,
bearing on the defendants' claim of a prescriptive right. All this evi-
dence was submitted to the jury, with full instructions as to what was
necessary to the gaining of a right by prescription, to which no excep-
tion was taken.

The defendants requested the court to instruct the jury " that the
defendants are entitled to keep up the water in its present dam,—that

of 1851,—as high as it would be raised by the dam of 1829, which the defendants, and those under whom they claim, kept up and maintained for a period of twenty years before the commencement of the injury complained of, even though the water is more uniformly kept up, and flowed to a greater height than by the dam of 1829, and even though the plaintiffs' land was flowed for a longer period of the year ; that the claim of the mill-owners depends upon and is limited by the effective height and capacity of the dam, according to its structure and operation, when in repair and in good order; and that variations produced by greater or less tightness of the dam, or the want at times of sufficient water to fill it, or the keeping the water down at times, for safety, in anticipation of high water, or the greater or less economy in the use of the water, or changes or improvements in the machinery, are not to be taken into account ; and that, if the jury find that the defendants have not exceeded this limit, they are entitled to a verdict ;—that, if the jury should find that the defendants have acquired a prescriptive right to a constant mill privilege by keeping up and using a dam more than twenty years, which dam in its usual operation would raise the water to a given height, and have used it at their pleasure at that height, without any claim of right on the part of the plaintiffs to have it drawn or kept down for any part of the year, or upon any definite occasion, the defendants have a right to retain it at the same height, although from the former leaky condition of the dam, the rude construction of the machinery, the want of water in the stream, or the lavish use and waste of the stream, the water has not 'n fact been constantly or usually kept up to that height ; and, if the defendants repaired or rebuilt the dam, without so changing it as to raise the water higher than the old dam, when tight and in repair, would raise it ; or, if the defendants used it in a different mode, and thereby kept up the water more constantly than before, it is not a new use of the stream for which the plaintiffs can claim damages, but a use conformable to the defendants' prescriptive right."

The court declined to give these instructions in this form, and the defendants excepted.

The court submitted the following questions in writing to the jury, which they answered as below at the time of returning their general verdict :

1. Was it the intention of the defendants, in the management and use of the dam and water at Lake Village, from 1830 to 1847, usually and ordinarily to keep the water below the top of the dam ? *Ans.* It was.

2. Was the water, during the period from 1830 to 1847, usually and ordinarily kept below the top of the dam at Lake Village ? *Ans.* It was.

3. During the period from 1830 to 1847, did the defendants raise the water to the height of the dam at Lake Village a sufficient number of times, and keep it at that height for a sufficient length of time, so that a reasonable man owning land upon the shore of the lake, knowing

of the existence and capacity of the dam, ought to have understood from his observation of their management of the water, that the defendants claimed the right to keep it at the same height at all seasons of the year, whenever they had occasion to do so ?  *Ans.* No.

The jury returned a general verdict for the plaintiffs, which the defendants moved to set aside.

*Tappan & Mugridge* and *Ellery A. Hibbard*, for the plaintiffs.

*Pike & Blodgett, G. W. Stevens, Thos. J. Whipple,* and *Dean*, for the defendants.

SMITH,* J.  If the instructions requested had been given, it is not improbable that the jury might have understood therefrom,—first, that the height of the dam, and not the height of the water, is the test of a prescriptive right; second, that the adverse enjoyment " need only be coextensive with the wants of the party claiming the right."

The first proposition is erroneous.

Merely maintaining a dam for twenty years, without thereby raising the water on the plaintiffs' land often enough to give notice that they claimed the right to flow it, would not give the defendants a prescriptive right to flow the plaintiffs' land as high as it could be flowed by means of that dam.  The mere erection and maintenance of the dam did no injury to the plaintiffs, and furnished them no ground upon which to maintain an action at law against the defendants.  " It is not the right to erect or maintain a dam upon their own land which the defendants seek to establish against the plaintiffs, for this right they have without any prescription.  The defendants may build and maintain a dam of any height on their own land, and, unless it pens back the water upon the plaintiffs' land, the plaintiffs cannot complain, and could not maintain a suit for damages or for the invasion of their right."  " It is not the height of the dam, but of the water, which does the injury ; " " it is not the dam, but the flowing of the land thereby," of which the plaintiffs now complain.  Until the defendants actually raised the water on the plaintiffs' land by means of their dam, they did nothing for which the plaintiffs could have recovered nominal damages, " in the assertion and vindication of an invaded right."  See *Sargent* v. *Stark*, 12 N. H. 332.  The erection of the dam by the defendants on their own land did not " render the plaintiffs' land a servient tenement."  To gain a prescriptive right, there must be something more than a mere intention to do some act on the plaintiffs' land ; there must be acts done on the plaintiffs' land.  The land-owners on the shores of this lake are not bound to make annual pilgrimages to Lake Village to measure the dam of the Lake Company, and employ an engineer to calculate whether, if kept tight and full, it can be used

---

* BELLOWS, C. J., and FOSTER, J., did not sit.

to throw water on their land.   See ZABRISKIE, Chancellor, in *Carlisle* v. *Cooper*, 4 C. E. Green (N. J.) 256, p. 260.   The time of prescription does not begin to run against a land-owner "until there has been an actionable invasion or infringement of a right."

The defendants rely on *Cowell* v. *Thayer*, 5 Met. 253 ; *Ray* v. *Fletcher*, 12 Cush. 200 ; and *Jackson* v. *Harrington*, 2 Allen 242.   But the weight of authority, as well as of reason, seems to us opposed to the defendants on this point.   See *Stiles* v. *Hooker*, 7 Cow. 266 ; *Mertz* v. *Dorney*, 25 Pa. St. 519 ; *Sargent* v. *Stark*, 12 N. H. 332 ; *Burnham* v. *Kempton*, 44 N. H. 78, p. 90 ; LAWRENCE, J., in *Cooper* v. *Barber*, 3 Taunt. 99, p. 110 ; ZABRISKIE, Chancellor, in *Carlisle* v. *Cooper*, 4 C. E. Green (N. J.) 256 ; CLEASBY, Baron, in *Courtauld* v. *Legh*, L. R. 4 Exchq. 126, p. 130.

If the plaintiffs had known, while the dam was building, that the defendants supposed they had a right to flow the plaintiffs' land by means of that dam, and that they intended to do so, and the plaintiffs, knowing this, had kept silent, it might be that this silence would prevent their now obtaining from a court of equity the extraordinary remedy of an injunction.   See cases cited in *Bassett* v. *Company*, 47 N. H. 426, p. 441.   But, in the case at bar, it does not appear that the plaintiffs had knowledge of the defendants' intention to flow, or, that the defendants supposed that they had the right to flow ; nor do the plaintiffs ask for the extraordinary and summary remedy of an injunction.

The second proposition is also untenable.

It has been suggested that " the enjoyment need only be coextensive with the wants of the party claiming the right ; " that " how many times the right has been exercised is not the material question, if the jury are satisfied that the claimant exercised it as often as he chose ; " and it has been said, in reference to these very defendants, that, if the Lake Company " claimed the right to keep the water in their dam at its full height whenever they chose, and had water to fill it, and exercised that right for twenty years, agreeably to their claim, it would be conclusive that they possessed the right ; "—argument of counsel in *Lowe* v. *Carpenter*, 6 Exchq. 825, p. 828 ; PATTESON, J., in *Carr* v. *Foster*, 3 Q. B. 581, p. 588 ; BELL, C. J., in *Winnipiseogee Lake Co.* v. *Young*, 40 N. H. 420, p. 436.   So far as these statements imply that the user need not be literally incessant and unintermittent during every moment of the twenty years, they are correct.   But they omit a necessary limitation.   The acts of user, although not required to be unintermittent, must be of such a nature and of such frequency as to give notice to the land-owner that the right is being claimed against him. The claimant may not " have occasion " to exercise the right claimed more than once or twice during the twenty years.   Such use would not be likely to give notice to the land-owner that a right was being claimed against him, and the law could not impute to him acquiescence in a claim, of the existence of which he had no reasonable indication. To permit an easement to be acquired by such an user would be subversive of the whole theory of acquiring title by prescription, and

would frustrate the object of the law in requiring twenty years' enjoyment. The long submission and acquiescence of the land-owner is the ground for denying him the privilege of subsequently disputing the right. One test question is, Has the land-owner had reasonable cause, from the actual use made of his land, to believe, during the entire period of twenty years, that the right was being claimed against him? If the use has not been such as to afford reasonable indication of the claim, the land-owner's right to object is not barred.

The court did not err in refusing to give the instructions requested.

*Judgment on the verdict.*

