MARCH 11,}
1875.        }              GRIFFIN *v.* BARTLETT.

The same proof of user, which establishes the right to use the water of a
stream in a particular way, is equally conclusive in establishing the limi-
tations of that right.   The doctrine of *Burnham* v. *Kempton*, 44 N. H.
78, affirmed.

B. having gained by prescription a right to flow G.'s meadow, from October
to June of each year, to the height of his ancient dam, repaired and
tightened the dam, erected an additional mill, put in new and improved
machinery consuming less water, and claimed the right to operate the
mills as thus constructed, provided he did not raise the water above the
top of his ancient dam.   *Held*, that he could not flow G.'s land in a dif-
ferent manner nor to a greater extent than he had formerly done.

G., having brought an action against B. for flowing his meadow, showed
no title to the land flowed, except a deed dated in 1831, and no posses-
sion prior to that time.   B. showed that G.'s meadow had been flowed
prior to 1831 by a dam over which he (B.) had exercised control since
1868, and claimed that his right to flow B.'s meadow would be presumed,
and that the burden of proof was on G. to show that he had acquired a
right to hold his land free of water.   *Held*, that the burden of proof was
on B. to show that he had a right to flow as claimed by him.

CASE, for flowing the plaintiff's meadow, situated on the shore of
Jenness pond in Northwood.   The declaration alleged that the defend-
ant, ever since the first day of January, 1867, had maintained, kept up,
and continued a mill-dam in said Northwood, across a brook forming
the outlet of said pond, and by means thereof has raised and kept up
the water in said pond, and thereby made it to overflow and drown the
plaintiff's meadow, whereby the plaintiff's grass growing on said
meadow was damaged, etc.   Plea, the general issue.   It appeared at
the trial that the dam named in the declaration had existed since about
the year 1828, and that a dam had existed near the site of the present
dam beyond the memory of man, and that they were used originally to
supply water to a certain ancient saw-mill which was owned by the
father of the plaintiff in common with the father of the defendant
and others, each owner having the right to use the mill one day in
twenty-four for every share owned by him during the life of the mill,—
the father of the defendant owning one share; and that for twenty-
nine years last past the defendant has drawn water from the same
dam to supply his shingle and clapboard mill, situated below the saw-
mill, subject to the right of the owners of the old saw-mill, so long as
it was in use, and since 1869 to supply a grist-mill also, having in
1868 and 1869 repaired and tightened the dam (and, as the plaintiff
claimed, raised it), and from that time assumed control over it.   It

did not appear whether or not the defendant drew water from the dam for a shingle and grist-mill during the time named in the declaration differently from or in less quantity than before.   One of the claims set up by the plaintiff was, that the ancient saw-mill was used almost entirely in the spring of the year; that it consumed large quantities of water; and that by its use the water was so drawn from the pond by the end of May that the lands of the plaintiff on the shore of the pond were left dry and free from water during the summer months and the months of September and October.   It also appeared that the saw-mill was suffered by the owners thereof to be disused and to decay, and that the same had not been used since the year 1859 or thereabouts; and the plaintiff claimed and offered evidence to show that after that time the gate in said dam had been raised in the spring of the year, and the water drawn off so that the plaintiff's land continued to be left dry and free from water during the months above stated, down to about the time the defendant repaired the dam, when he refused to hoist the gate or allow it to be hoisted, since which time the water has remained upon the plaintiff's land during the summer months.   The defendant claimed that the plaintiff, claiming title under his father, who owned one share in the mill, is estopped to complain of any damage arising from its disuse; but the court ruled otherwise, and the defendant excepted. The defendant also asked the court to instruct the jury that the mere neglect or refusal of the defendant to open the gate of said dam under the above circumstances does not entitle the plaintiff to maintain this action; but the court instructed the jury that the law would be as stated by the defendant if he did not maintain the dam: but the defendant having repaired the dam and assumed control over it, he is liable, unless he has a right to keep the water as he did keep it; to which the defendant excepted.   The plaintiff showed no title to the land flowed except a deed dated in 1831, and no possession prior to that time.   The defendant offered evidence to show that the dam had existed before 1831, and claimed that it was substantially of its present height, while the plaintiff claimed and offered evidence tending to show that its efficient height was increased by the defendant when he repaired it in 1868 and 1869.   The evidence showed that the dam had been used prior to and since 1831 to raise the water upon the land claimed by the plaintiff, and that it had raised the water to the full height of the dam at certain seasons of the year; but the plaintiff offered evidence to show (and no evidence was offered to contradict it) that the land flowed was cleared up soon after 1831, had been mowed every year afterwards down to the year 1868, and cranberries had been picked every year down to the year 1868, and that it had not been flowed down to that time during the summer months and September and October, but that since 1868 the plaintiff had not been able to mow said meadow, nor pick any cranberries upon it, except a few in a boat in the fall of 1868; and the evidence tended to show that the cranberry vines had all been killed, and also the trees upon that part of the meadow claimed to be flowed, and that it had been covered with water substantially the

whole season. The defendant claimed that having proved that the land had been flowed prior to 1831 by the dam, of which he had exercised control since 1868, the right of the defendant to continue the flowage is to be presumed, and that the burden is on the plaintiff to show that the defendant's right to flow the land had been lost or modified, or that the plaintiff has acquired a right to hold the land free of the water; but the court charged the jury that there is nothing in the fact that the title of the defendant is older than the title of the plaintiff, but the defendant must still make out his right to flow the land by proving twenty years' adverse use in the manner complained of; to which the defendant excepted. The defendant showed title to an undivided half of the land upon which the dam and saw-mill stood; but there was no evidence of any right in the defendant to flow the plaintiff's land, except such as had been gained by prescription. The defendant requested the court to instruct the jury (1) that the extent of the defendant's right to flow the shores of Jenness pond will be the height to which a dam of the same height as that which the dam he has sustained more than twenty years would flow, although some part of the time, by leaking and want of repair, the dam has not kept the water to its original height; and that the owner of such a dam may repair it and thereby keep the water up uniformly; [(2) and that if the jury find that the defendant, or the persons from whom he derives his title, did, more than twenty years before the date of the writ, build or maintain a dam calculated and intended to raise the water as high as the top of the same, and did from time to time repair and tighten said dam so that the same did so raise the water, the right to keep the water as high as the top of the dam is not lost by the dam becoming leaky and out of repair, but the owner might at his pleasure repair and tighten the dam;] (3) and that the existence thereof, with mills in actual use, and the frequent flowage of water to the height of the dam, was notice to the plaintiff of the claim and right of the defendant to maintain, repair, and tighten the dam, and that the right of the defendant was maintained, notwithstanding the dam from time to time became leaky and insufficient to keep up the water long at a time; (4) also, that a mill-owner may adopt improved machinery in his mill, which takes less water to carry it than that in use before, although the effect of this may be to keep a higher state of water in his pond; and that this defendant had the right to substitute other machinery, and that which would use less water or use it less rapidly, for the old saw-mill, provided he did not raise the water above the top of his ancient dam; (5) also, that under the present declaration the plaintiff cannot recover for damages caused, not simply by the maintenance of the defendant's dam, but by the improper use of it at certain seasons of the year, or by the omission to withdraw the water so rapidly or so early in the season as the defendant ought. The defendant excepted, because the court did not give these instructions, except the portion enclosed in brackets, and because the court added thereto the following: "that is to say, if he had once gained the right he would not lose it by letting the dam get leaky and

out of repair for a period of less than twenty years." There was no evidence that the defendant had introduced any improved machinery into his mill, or made any change in his mill except the addition of a grist-mill. The court instructed the jury, that if the defendant or those under whom he claimed had raised the water to the height of the dam a sufficient number of times, and kept it up for a sufficient length of time, so that a reasonable man, owning land upon the shore of the pond, and knowing of the existence and capacity of the dam, ought to have understood from his observation of the management of the water that the defendant or those under whom he derived his title claimed the right to keep it at the same height at all seasons of the year whenever they had occasion to do so (during a period of twenty years before any controversy arose), then the defendant has gained such right and is not liable.

Verdict for the plaintiff. Motion to set it aside. The case was reserved.

*Wiggin* (with whom was *Marston*), for the plaintiff.

*Hatch*, for the defendant.

Smith, J. 1. The defendant claimed that the plaintiff, claiming under his father who owned one share in the saw-mill, is estopped to complain of any damage arising from its disuse. I do not understand how any such question could arise in this suit. The plaintiff does not claim damage from the disuse of the saw-mill, but because, as he alleges, the defendant has flowed his land. The ruling was therefore correct. Whatever rights were acquired growing out of the operation of the old mill expired with the disuse and decay of the mill, or, as expressed in the deed used on the trial, were to be enjoyed "during the life of the mill." It does not appear that the plaintiff has used the dam since the saw-mill went into disuse in 1859, or has in any way interfered with it, except to raise the gate in the spring for the next ten years to permit the water to be drawn off from his land during the summer months. Since 1868 or 1869, the dam has been under the exclusive control of the defendant, who has refused to allow the plaintiff to draw off the water in the summer months, as had been done previously, or to exercise any control over it. There is no ground then for claiming, as the defendant did in the argument, that for all damages in this suit growing out of the neglect to use the saw-mill the plaintiff and the defendant are jointly liable, if at all, and cannot be sued separately, nor that the neglect of the plaintiff contributed to the injury as much as that of the defendant.

2. The defendant's refusal since 1869 to hoist the gate, or permit it to be done in the spring, caused the plaintiff's land to be flowed during the summer and fall months. Whatever right of flowage the defendant or those under whom he claimed had gained to flow the plaintiff's land in the winter and spring by prescription, neither he nor they had gained

any such right from June to October.  The defendant, having assumed control of the dam in 1869 and excluded the plaintiff from its use or possession, must be liable unless he had a right to keep the water as he did keep it, and the instruction of the court in this respect was correct.

3.  The case finds that the defendant had no right to flow the plaintiff's land, except such as he gained by prescription.  The burden of proof was therefore on him to show not only that he had gained a prescriptive right to flow the plaintiff's land, but that he had gained such right to the extent claimed by him.  The mere fact that his title was older than the plaintiff's is of no consequence.  The construction asked for was equivalent to saying that the defendant's prescriptive right was established by flowing the land before the plaintiff bought it, without reference to length of time or manner of flowage.  When the right to flow is once proved to have been gained, either by prescription or grant, undoubtedly the burden of proof is on the person whose land is flowed to show that the right has been lost or modified.  The instructions of the court to the jury that the defendant must still make out his right to flow the land by proving twenty years' adverse use in the manner complained of, notwithstanding his title was older than the plaintiff's, were therefore correct.

4.  As to the remaining instructions asked for by the defendant, the first has some support from the authorities in Massachusetts.  *Cowell* v. *Thayer*, 5 Met. 253 ; *Ray* v. *Fletcher*, 12 Cush. 200 ; *Jackson* v. *Harrington*, 2 Allen 242 ; *Bliss* v. *Rice*, 17 Pick. 23.  The doctrine of the latter case was dissented from in *Burnham* v. *Kempton*, 44 N. H. 90, where it is said by SARGENT, J., " that twenty years' maintenance of a dam in a particular mode is evidence of a grant or right so to maintain it, and twenty years' use of the water in a particular way is evidence of a right thus to use the water.  The same proof of user which establishes the right, is equally conclusive in establishing the limitations of that right.  Twenty years' accustomed flow and use of a certain stream or pond of water, is as good evidence of right to the one party as to the other.  Twenty years' support, subject to the qualifications before stated of a mill-dam, is evidence of a grant to build and maintain just such a dam, constructed and used substantially in the same manner ; " —see, also, *Bucklin* v. *Truell*, 54 N. H. 122.

The doctrine of the other Massachusetts cases above cited was dissented from in *Gilford* v. *Lake Co.*, 52 N. H. 266, the judge who delivered the opinion of the court very pertinently remarking,—" Landowners are not bound to make annual pilgrimages to measure the dam, and employ an engineer to calculate whether, if kept tight and full, it can be used to throw water on their land."

The second instruction asked for was given in substance.  What the court added was the same doctrine expressed in different language. There is no question that a right to flow once gained is not lost by neglect to assert the right for a period less than twenty years ; and this is the fair construction of the language of the instruction asked for, and of the explanation given by the court.

The third instruction asked for does not conform to the rule as laid down in *Gilford* v. *Lake Co.* The instructions given were in the language of the court in that case. The distinction is obvious. It was material for the defendant to prove that the right to flow to the height and in the manner claimed by him had been asserted, and the flowage kept up during a period of twenty years before any controversy arose, and also to show that the flowage, to the height and in the manner claimed, was so frequent and kept up for such length of time, that the plaintiff, knowing of the existence and capacity of the dam, ought reasonably to have understood from his observation the extent of the defendant's claim.

There was no evidence, relevant and pertinent, upon which to found the fourth instruction asked for. *Goodrich* v. *Eastern R. R.*, 38 N. H. 390. It is claimed, however, by the defendant, that the operation of a grist-mill since 1869, in addition to the clapboard and shingle-mill, made the request true in fact. The addition of another mill would increase the consumption of water. But the question was not whether he had merely raised the water above the top of his ancient dam. This right to flow the plaintiff's land as it had been flowed down to the time he assumed control of the dam was not questioned, but the plaintiff claimed it was limited and defined by the manner it had been flowed uniformly down to that time; and the question was, whether, with such machinery as was actually used, even though it was of such improved patterns that he was enabled to operate an additional mill with the same quantity of water, he flowed the plaintiff's land in a different manner or for a longer period in the year than he had previously done.

The last instruction asked for was also properly refused. The declaration alleges that the defendant has maintained the dam since January, 1867, and *thereby* made the water to overflow and drown the plaintiff's meadow, *whereby* the plaintiff's grass growing on said meadow was damaged, etc. The mere erection and maintenance of the dam furnished no ground to the plaintiff upon which to maintain an action at law against the defendant. The gist of the charge in the declaration as well as of the action is not the maintaining of the dam, but the flowage of the plaintiff's land; and the authorities leave no room for doubt that the declaration is sufficient for supporting this action. *Curtice* v. *Thompson* 19 N. H. 471; *Sargent* v. *Stark*, 12 N. H. 332; *Gilford* v. *Lake Co.*, 52 N. H. 262; *Carleton* v. *Redington*, 21 N. H. 291.

CUSHING, C. J. The plaintiff claims damages against the defendant for maintaining a certain dam at the outlet of Jenness pond, from the first day of January, 1867, to the date of the writ, and thereby causing his land to be flowed so that he lost the use of it.

The damage shown was, that the plaintiff's land, which was cleared in 1831, and had been mowed and borne cranberries every year till 1869, had since that time been so flooded by the defendant's dam that

it could not be mowed; that the cranberry vines had been destroyed, and the trees had died; and that this damage had been caused by the defendant's management of the dam, which he had fully controlled, and from the possession of which he had excluded the plaintiff.

This dam, and a former dam which this had replaced, had been used to supply water to an ancient saw-mill, under an agreement between the plaintiff's father whose rights he had, and the party whose rights the defendant had, which agreement by its terms was to endure during the life of the mill; and I infer from the plaintiff's argument that the plaintiff and the defendant were tenants in common of this dam.

Subject to the rights of the owners of this mill, the plaintiff, for twenty-nine years before the commencement of the action, had drawn water to supply his shingle and clapboard mill, but had not excluded the other tenants in common; and the evidence tended to show that by the use of the saw-mill until its "death," in 1859, and by opening the gates afterward, the water had been so drawn down that in the summer months and in September and October the plaintiff's land had not been flowed, and had been in suitable condition for cultivation; but that after 1868, the defendant had assumed exclusive control of the dam, and so maintained the dam and managed the water as to do the injury complained of.

The plaintiff acquired his title in 1831; and the defendant offered evidence tending to show that he had flowed the land at some seasons of the year before the plaintiff acquired his title.

The plaintiff, having made out his title to the land, and shown the damage done to him by the flowage, it was incumbent on the defendant to make out his right.

The defendant's first claim was, that the plaintiff, being tenant in common with him of the dam, was as much to blame as he was for letting the saw-mill fall into disuse, and so for all that class of injuries he was estopped from complaining,—which the court very properly denied, because the plaintiff was not claiming damages for any such injury.

The defendant further asked for the instruction that his neglect or refusal to open the dam would not make him liable, which the court admitted to be true so long as the defendant had not excluded his cotenants, but denied to be true at the time covered by the plaintiff's action, when he had, as it appeared, assumed exclusive control.

In the case of *Fifield* v. *Bailey, post,* it was held that the disseizee could maintain an action on the case against the disseizor for a nuisance maintained by him on land of which he had wrongfully dispossessed the plaintiff. I fail to see that the case is in any respect different when the disseizor was a tenant in common with the disseizee.

It may be remarked here, that the defendant's claim that he and the plaintiff were occupying the dam as tenants in common, and therefore equally responsible for the flowage, is necessarily fatal to the defendant's claim of any prescriptive right, it being well settled that a party cannot acquire a prescriptive right against himself. See *Wilder* v. *Clough, post.* The defendant's ground is, that such user as tenants in

common must be permissive on the part of the plaintiff, and not adverse.

The defendant also claimed that, having shown that he had flowed the land, the law would presume that his right to flow continued until he was shown to have lost it. This would seem to have been a statement in a new form of the doctrine of *Dunklee* v. *The Wilton Railroad*, 24 N. H. 489, that property conveyed, passes subject to all existing easements ; but that doctrine in that case is limited to rightfully existing easements, which the court rightly held must be the limitation here.

The other instructions claimed by the defendant, so far as disallowed by the court, were attempts not in conformity with the law to substitute some secondary measure of the extent of the prescriptive right, instead of the actual extent of the flowage.

Nothing can be more fallacious than the idea that the height of a dam can be the measure of the right to flow gained or lost. Suppose, for instance, a party maintains his dam at a certain height, and afterward, by improved reservoirs or other means, the water is so increased as that instead of being dried up in the summer months, the pond should be kept full of water during the whole season : land which under the old mode of usage would be drained in the summer months would now become saturated with water during the same season, and the water grasses would take the place of the former more valuable products. The right acquired by prescription to keep the dam at a given height, under the former state of things, would hardly be extended to the latter.

LADD, J. The case shows that the defendant, within the time covered by the declaration, has maintained a dam, and thereby flowed the plaintiff's land. For the damage thus caused he is liable in this action, unless he shows a right so to do. I cannot find anything in the case to sustain the position taken by the defendant's counsel in argument, that the plaintiff is seeking to recover for damage caused by a neglect to use the old mill. The declaration certainly shows nothing of the kind, and I am quite unable to perceive how the use, or disuse and decay, of the old mill bears upon any question we are to decide. The evidence as to how the water was used in connection with the old mill, as well as that with respect to the hoisting of the gate and drawing off the water in the summer seasons after 1859, bore upon the nature and extent of the right to flow, if any, which had been gained against the plaintiff by an adverse user, and was properly received for that purpose.

The injury of which the plaintiff complains is, not that his rights in the use of the water at the mill, or in the control and management of the dam, have been infringed, but that the defendant, who has in fact been in the occupation of the premises, and has had and exercised an actual control and management of the water, has without right so managed it as to flow and injure the plaintiff's land. The refusal of the defendant to hoist the gate is nothing more than an incident in his

management and control of the water. I do not see that it matters at all whether he kept the water up by refusing to hoist, or allow to be hoisted, a gate already existing in a dam at the outlet of the pond, or by erecting and keeping up a solid dam there not furnished with any gate at all. I am therefore of opinion that the defendant's position on this point cannot be maintained.

After the plaintiff showed that the defendant had kept up the water and caused it to flow his land, it was for the defendant to show his right to do so. Such right was not established by the fact that the dam had been used prior to 1831, when the plaintiff's title accrued, in the way stated in the case, without showing an occupation and user sufficient to establish the right claimed by prescription. This was not done, and I think the ruling that there was nothing in the fact that the defendant's title is older than that of the plaintiff, etc., was correct.

I see no fault in the instructions to the jury, and all the requests that were proper to be given seem to be covered by the instruction that was given.

The fourth request, as to the putting in of improved machinery and its effect on the condition as to height of the water in the dam, was not called for by the evidence, as is shown by the case, and was properly refused.

As to the defendant's contention that the height of the dam measures the extent and determines the character of a water right gained by prescription, that matter was decided in *Gilford* v. *The Lake Co.*, 52 N. H. 262, adversely to the defendant's view. The exceptions must be overruled, and there must be

*Judgment on the verdict.*