March 22, 1876. } SCHOFF v. THE UPPER CONNECTICUT RIVER AND LAKE IMPROVEMENT COMPANY.

*Flowage—Damages—Trial of title by jury—Practice.*

The defendants were authorized by their charter to erect dams to facilitate the rafting of logs, and for other purposes, within certain limits in the county of Coös; and it was provided, that any owner of property damaged thereby might apply to the supreme court of the judicial district of said county in which such property may be situated for the assessment of such damages. A petition filed by virtue of said statute should show (1) in which district of Coös county the property alleged to be damaged is situated; (2) that the property is situated within the chartered limits of the corporation; (3) that the petitioner owns the property alleged to be damaged, or has some title or interest therein; (4) that the property of the petitioner has been damaged by some act which the defendants were authorized by their charter to do; (5) and the property should be described with such certainty that it may be identified.

The defendants may plead in bar of the plaintiff's title, and when issue as to such title has been joined, such issue will not ordinarily be tried by a jury till the matter of title as well as of damages has been heard by a committee.

FROM Coös CIRCUIT COURT.

PETITION, setting forth that by an act of the legislature of this state, approved July 1, 1863, James M. Hilliard and others were made a body corporate by the name of the Upper Connecticut River and Lake Improvement Company, with the right to erect and maintain across said river and upon said lake such dams, piers, and other arrangements for holding and distributing water as might facilitate the rafting, driving, and securing lumber upon said river and lake ; that said company, under and by virtue of said charter, have built and maintained, and still do maintain, a dam across the outlet of said lake, and by means of said dam have raised the water in said lake to a great height, to wit, to the height of twenty feet, and have by means thereof caused the water of said lake to overflow its banks, and to overflow and submerge the land of the plaintiff, and do great damage to her timber and fences, and spoil her fences and fields, and do other great damage to her premises. The petitioner then asks that the defendants may be cited in to answer ; that the court shall cause said matters and claim for damages to be tried and estimated by three disinterested freeholders, and reported by said committee to said court, and for such other relief as may be just.

The defendants appeared, and moved to dismiss the petition ; which motion the court denied, and the defendants excepted. They then moved for leave to file a plea in bar, alleging that at the date of the filing of her said petition she was not the owner of the land and property in said petition described. The court denied this motion, and the defendants excepted.

The questions of law arising upon the foregoing case were transferred to this court by STANLEY, J., C. C.

*Aldrich & Parsons* and *G. A. Bingham*, for the defendants.

*Dudley*, for the plaintiff.

SMITH, J. By ch. 2805 of the Pamphlet Laws, approved July 1, 1863, the defendants were made a corporation, with power to remove boulders, rocks, and other obstructions from, and enlarge the channel of, Connecticut river and lake, and to erect and maintain dams, piers, and booms to facilitate rafting, driving, floating, and securing lumber upon said river and lake anywhere within the chartered limits mentioned in the act, which were defined to extend from the inlet of the first Connecticut lake in Pittsburg, to a point opposite Smith's factory

in Stewartstown. Said corporation was also authorized to include within its powers and privileges the small tributaries within the limits aforesaid, emptying into said river, known as Hall's stream, Indian stream, and Perry's stream. By an amendment passed in 1867 (ch. 64, acts of 1867), the limits were extended down the river to " Fifteen-mile Falls," so called.

By ch. 170 of the Pamphlet Laws, approved June 26, 1874, the owner of any property, situated within the chartered limits of the de-fendants, who shall feel that his property is damaged by any improve-ment made or act done by virtue of the second section of the defend-ants' charter, may apply by petition to the supreme court of the judicial district of the county of Coös, in which said property is situated, and the court, after citing the defendants to answer to the same, shall cause said matters and claims for damages, as well past as prospective, to be tried and estimated by a committee of three disinterested freeholders of the county, whose report being made to the court, and judgment being rendered thereon, the same shall be final and conclusive between the parties. Either party dissatisfied with the report of the committee may apply for a trial by jury, which shall be granted, and judgment rendered upon the verdict shall be final.

The plaintiff has filed her petition in the circuit court for the north-ern district of this county, under the provisions of the last named act, and which the defendants have moved to dismiss. The reasons upon which this motion was grounded do not appear from the case as trans-ferred. In the argument, however, several reasons are set forth, which we will proceed to consider.

1. " Because it is not shown by the description, nor alleged, that the property is situated in the district where the petition is pending."

It has been held that inasmuch as the jurisdiction of the court over petitions for the laying out of highways is limited and special, depend-ing upon the particular exigencies described in the statute, the estab-lished rules of pleading require that the petition to the court should contain a statement of all the facts necessary to give jurisdiction to the court ; and if it fails to do so, the proceedings may be suppressed at any stage. *Huntress* v. *Effingham*, 17 N. H. 584. As this petition contains no statement that the property alleged to be damaged is sit-uated in the northern district, the petition is defective in this respect, but may be amended upon leave being obtained in the circuit court.

2. It is also objected that " the right to petition is only given to owners of property situated within the chartered limits of the defend-ants, and it is not shown by description, nor alleged, that the property is so situated."

An inspection of the defendants' charter, as granted in 1863 and amended in 1867, shows that the chartered limits do not extend beyond the limits of the county. But the limits, also, are not coëxten-sive with the limits of the county. If the petition is amended so as to show that the property is situated within the northern district, it would not necessarily follow that it is situated within the chartered limits

of the corporation. The further fact should therefore appear in the petition, that the plaintiff's property is within the company's limits.

3. " Because this remedy is given only to the 'owner' of property, and it is not alleged (unless 'submerge the land of the plaintiff,' &c., is equivalent to such allegation) that the petitioner is the owner of the property described."

The allegation in the petition is, that the defendants have caused the water " to overflow and submerge the land of the plaintiff, and do great damage to her timber and fences, and spoil her fences and fields, and do other great damage to her premises." Alleging " that land of the plaintiff " was overflowed, can certainly mean nothing less than that the plaintiff owned certain land which the defendants flowed. There is no doubt that the term " owner," as used in the statute, is broad enough to cover any interest which the plaintiff may have in land damaged by acts of the defendants, whether a fee, or an estate less than a fee. Because the statute gives a remedy to the " owner of property," it does not follow that it is necessary he should allege in the petition that he is " owner " of the property which he claims has been damaged. Any words of equivalent meaning must undoubtedly answer as well. Whatever estate the plaintiff may have in these premises, whether an estate in fee, or in reversion or remainder, or for years or for life, she is entitled to recover according to her title, whatever her damages may be, occasioned by the acts of the defendants.

4. Because, if the defendants " had without right erected a dam on the petitioner's land, there would be a claim for general damages; if, by reason of the *building*, the dam-water flowed back over the petitioner's land, there would be special damages; but if neither state of facts exists, but (as the petition alleges), after the dam was erected, the defendants wrongfully used it as an instrument for damaging the petitioner, the damages would be too remote to be held to be occasioned by the building of the dam, and proceedings could only be instituted to recover for the tortious use, and not for the erection of the dam."

The statute gives this remedy to the owner of property " damaged by any improvement made or act done by virtue of the second section" of the defendants' charter. The petition alleges that the defendants have erected and maintained a dam at the outlet of the lake, and by means of the dam have raised the water in the lake twenty feet, and by means thereof caused the water of the lake to overflow and submerge the plaintiff's land, and do great damage to her timber, &c. In what plainer terms could the plaintiff set out her damage. It is true, the mere erection or maintenance of a dam furnishes no ground to the plaintiff upon which to maintain an action at law against the defendants. *Curtice* v. *Thompson*, 19 N. H. 471. But the gist of the charge in this petition, as well as in an action at law, is not the maintaining of the dam, but the flowage of the plaintiff's land. *Griffin* v. *Bartlett*, 55 N. H. 119. If at the hearing the plaintiff only proves that the defendants have erected a dam, and fails to prove that by means

thereof her land has been flowed, and thereby injured, she cannot recover; but if she proves both, why should she not recover?

5. "Because the damages alleged were not caused by any act authorized by the second section of the act of 1863."

This objection proceeds upon the ground that the second section of the act of 1863 does not expressly authorize the defendants to raise the water in the lake, and that such authority is not to be inferred, and therefore this " proceeding is misconceived as not seeking damages caused by any act done by virtue of the second section of the charter." I suppose it will not require much argument to show that the authority to erect a dam carries with it the authority to use it. Ships are constructed to plow the seas, cars to run upon railways, buildings for shelter, and dams for obstructing the natural flow of a stream till the waters are wanted for the desired purpose. The second section of the defendants' charter defines the purpose of erecting the dams, piers, and booms to be, " to facilitate rafting, driving, floating, and securing lumber upon said river and lake." How this purpose could be facilitated by the mere erection of dams, without at the same time obstructing the flow of the water and thereby raising its height, it would be difficult to explain. The defendants would hardly rest satisfied if told that the legislature has conferred upon them the empty authority to construct dams, piers, and booms, without the authority to make any use of them when constructed.

There can be no doubt that the flowage of the lands of others, by the dams constructed by these defendants under authority of their charter, is an " act done " by the defendants, for which the statute of 1874 gives the owners so damaged the right to maintain a petition for the assessment of their damages.

6. " Because the plaintiff does not allege that she claims under the act of 1874."

This objection is not well taken. The defendants have no authority to do the acts complained of under chapter 20 of the laws of 1868. By that statute any person, or any corporation authorized by their charter so to do, may erect and maintain on his or their own land, or upon land of another with his consent, a water-mill, and a dam to raise the water for working it, or for creating a reservoir of water, and for equalizing the flow of the same for its use, and of mills below, upon and across any stream not navigable; and the statute does not authorize it to be done for any other purpose. But the defendants, by their charter, are authorized to erect dams, booms, &c., to facilitate the rafting, driving, floating, and securing of lumber. It is perfectly apparent, then, that this petition is brought under the act of 1874, and not under that of 1868. But if there be any doubt on that point, the petition can be amended in this respect.

7. " Because there is no description of the land flowed, and the record would not protect the defendants from future litigation in regard to the same property or damages."

There is no doubt the land should be described so that it can be readily identified, and this may be done by amendment.

8. " Because there is no *ad damnum*, or allegation of the amount of damages."

None is necessary. The statute prescribes no form for a petition as it does for a writ.

The petitioner can amend her petition to conform to the foregoing views, upon obtaining leave in the circuit court, and upon such terms as that court may order.

9. The defendants moved for leave to file a plea in bar, alleging that at the date of the filing of her petition the plaintiff was not the owner of the land and property described in the petition. If the petitioner, at the date of exhibiting her petition, was not the owner of any property within the chartered limits of the defendants, she cannot, of course, maintain this petition. By " owner " is meant, as above explained, one who is seized of an estate in fee, or for life, or of some less estate. The defendants ask to contest the question of ownership *in limine*, before the question of damages is reached. There is nothing in the statute that forbids this. It is often done in proceedings by petition for partition, but that is by authority of statute. Gen. Stats., ch. 228, sec. 9. But I think if the legislature had intended to give this to these defendants as a matter of right, they would not have left it to be inferred by analogy to similar proceedings in a petition for partition. If such had been the intent, it would most likely have been conferred in express terms in the act of 1874. The defendants probably have the right to plead in bar the want of ownership by the plaintiff, and the plaintiff will reply, and the defendants rejoin, until they come to an issue whereby the exact state of the plaintiff's title can be tried ; but it must be in the discretion of the circuit court to determine whether the petition should be sent to a committee before trying the question of title. To allow a trial by jury first, to determine that question, and then, if found in favor of the petitioner, to send the matter to a committee to assess her damages, with the right to the defendants, upon the coming in of the report, to go again to the jury upon the question of damages, would seem to be a needless proceeding, productive of expense and delay. I am loath to believe such a tedious process was intended. Unless for reasons of an extraordinary character, the court would hardly be justified in permitting this to be done.

I see no difficulty in sending a petition of this character directly to a committee. The owner must, of course, prove his title to the premises, as well as the fact that they are injured by the defendants' acts, and the damages are to be assessed according to the state of the title found before them, and from their report either party can appeal to the jury.

No reason is shown here for departing from this course, and therefore I think the request to try the question of the plaintiff's title by jury should be denied till after a hearing has been had by a committee.

LADD, J. I am also of opinion that the petition should not be dismissed for any of the causes alleged by the defendants. If any more specific allegations were desirable, they might have been easily supplied

by amendment on motion of either the plaintiff or the defendants, were it made to appear that they were necessary to a fair and proper trial of the matter in controversy before the committee.

The report of the committee ought doubtless to state, and describe very carefully, not only the property in respect of which damage is given, but also to contain as accurate a description of the right which the defendants are to acquire by virtue of the proceedings, by visible and permanent monuments on the ground, as the nature of the case will permit, according to the views expressed in *Town* v. *Faulkner*, 56 N. H. 255.

As to the motion to file a plea in bar that the plaintiff is not the owner of the property described in the petition, if this motion be regarded as raising the question whether the defendants were entitled as matter of legal right to have the plaintiff's title tried in court before the committee is sent out, I think the claim of the defendants cannot be sustained. It seems to me it is rather to be treated as a matter within the discretion of the court, in determining the order in which the trial shall go forward. The court followed the literal terms of the statute in sending the case to a committee, before the question of title was determined, upon a plea. Of course, unless the plaintiff makes out some title before the committee, she cannot have any relief, and her petition fails. I see no incongruity or hardship to the defendants in requiring them to go before the committee on that question, as well as a great variety of others which it may be necessary to consider in determining whether the plaintiff is entitled to the relief she seeks.

I suppose the defendants may have a right under the rule to file a special plea in bar denying title in the plaintiff, and if the court were satisfied upon proper evidence that a serious or difficult question as to title was involved, it would seem to be a very proper and judicious exercise of discretion to permit that question to be settled in court before the committee is sent out. But no question of discretion is before us on the case reported, and I think the exceptions should be overruled, except as indicated by Judge SMITH, and that the plaintiff should be allowed to amend in the particulars named.

CUSHING, C. J., concurred.

*Exceptions overruled.*