TOWN *v.* FAULKNER.

*Mill act of 1868—Duty of committee.*

{ Dec. 21, 1875.

| 56 | 255 |
| 67 | 182 |
| 56 | 255 |
| 70 | 285 |
| 170 | 286 |
| 56 | 255 |
| 72 | 135 |

By the mill act of 1868, it seems that the mill-owner may elect to what height he will raise the water on the land of riparian owners above; and the assessment of damages by the committee should be made upon the basis of such election.

A mill-dam is a common and convenient instrument wherewith to measure and describe the extent of a water-right; but such right may be defined and limited by any other appropriate monument on the ground.

A mill-owner erected a dam with the capacity of raising the water beyond his existing right, but provided with gates, &c., whereby he supposed it to be within his power to keep the water within the limits of his right: and it was always his intention so to manage the dam and gates as not to overstep his right, until he could arrange by contract with the owners of land above liable to be flowed. On a petition brought by a land-owner, under the act, it was *held*, that the actual interference with the water, and not such interference as was rendered possible by the height of the dam, was the proper basis for the assessment of damages.

The committee, in such cases, should fix some suitable and permanent monument on the ground, to mark the limit of the right which is to pass by virtue of the proceedings; and such monument should be carefully and accurately described in their report.

FROM SULLIVAN CIRCUIT COURT.

A petition under the " act for the encouragement of manufactures," Laws of 1868, ch. 20, having at a previous term been referred to a committee, the committee made the following report: " That they are of opinion that the flowing or draining of said Allen Town's land, described in his petition, to the depth and extent that the same may or can be flowed by the new dam, built by the defendants in September, 1872, at the outlet of Ashuelot pond, so called (the same being built four feet higher than the old dam of the defendants, theretofore standing upon the same site), is or may be of public use or benefit to the people of this state, and that the same is necessary for the use of the mills for which said dam was designed; and they estimate the damage caused to the plaintiff by the erection and maintenance of said dam, and the flowing or draining thereby of the lands of the plaintiff, described in his petition, to the extent that they can be flowed and drained by said dam, and the injury thereby caused to the plaintiff's water privileges, described in his petition, and all other injuries arising to the plaintiff from the erection and maintenance of said dam, at the sum of one hundred sixteen dollars and sixty-seven cents.

"At the request of the defendants, and with the consent of the plaintiff, for the purpose of correcting any errors that the committee may have made in construing the law applicable to the case, the committee further report, that they construe the act passed July 3, 1868, entitled 'An act for the encouragement of manufactures' (Pamph. Laws, 1868, ch. 20), to mean that the plaintiff is entitled to such damages as may be occasioned to him by flowing his land to the depth and extent that it may or can be flowed by the defendants' dam as they constructed it, notwithstanding it may have been the intention of the defendants, at the time of building the dam, and ever since has been and still is their intention and endeavor, to use it, with the aid of the gates in it and the roll-ways over it, so as not to raise the water any higher thereby than they had a right to raise it by the former dam.

" If the intention of the defendants, at the time of building said new dam and since, is material in this action, the committee report that it was then, ever since has been, and still is the intention of the defendants to so use the dam as not to raise the water thereby any higher than they had a right to raise it by the former dam, until they shall acquire a right by purchase, or other contract, to raise it to the height of the new dam,—and they have instructed their servant having charge of it, to control the gates in it in such a manner as to effect this intention; that the new dam was built to its present height in contemplation by the defendants of extinguishing the titles adverse to the flow-

age created thereby, by purchase at some time ; that about the time of its erection, and since, the defendants, in pursuance of their said original design, have purchased lands and rights of flowage in three instances, but have not yet acquired all the rights that are adverse to the flowage created by said new dam, and that, notwithstanding the defendants' intention and endeavors to the contrary, the water has been raised and kept higher at times upon the plaintiff's land by the new dam than it could be by the former dam.

"The committee further report, at the defendants' request, that there are no mills at the outlet of said Ashuelot pond, where said dam is ; but the defendants' mills, for the use of which said dam was designed, are situated in Keene, N. H., on the Ashuelot river, at a distance of about twenty miles from the dam."

The questions of law thus raised were transferred to this court for determination by Foster, C. J., C. C.

*Barton,* for the plaintiff.

*Wheeler & Faulkner,* for the defendants.

Ladd, J. The committee report, that in estimating the damages to which the plaintiff is entitled, under the mill act of 1868, they construed that act to mean that the plaintiff is thereby entitled to such damages as may be occasioned to him by flowing his land to the depth and extent that it may or can be flowed by the defendants' dam as they constructed it, notwithstanding it may have been the intention of the defendants at the time of building the dam, and ever since has has been and still is their intention and endeavor, to use it, with the aid of the gates in it and the roll-ways over it, so as not to raise the water any higher than they had a right to raise it by the former dam. In another part of the report they say that "notwithstanding the defendants' intention and endeavors to the contrary, the water has been raised and kept higher at times upon the plaintiff's land by the new dam than it could be by the former dam." The extent of this excess, how often it has happened, how long it has continued, the season of the year, and other circumstances under which it has occurred, do not appear, for the reason that, in the view which the committee took, all these things were immaterial.

I am of opinion that the committee erred in their interpretation of the statute.

Suppose the defendants, upon their own land, or on the land of another with his consent, had erected a dam of any supposable height or capacity, but so furnished with gates and water-ways as to keep it always within their power to provide exactly the same means and facility for the flow and exit of the water as existed before: and suppose the dam and gates had always been so managed that no change whatever was at any time occasioned thereby in the height and condition of the water above : could it be contended that a case was shown

for the application of this act? That the riparian owner above has in such case suffered no actual damage, is absolutely certain. That none of his rights have been invaded or infringed, seems equally clear in reason, and is settled by authority in this state—*Gilford* v. *Lake Co.,* 52 N. H. 262, and cases cited. The land-owner has lost nothing; the dam-builder has taken nothing. If the latter shall be held under this act to pay the former some sum to be assessed under the name of damages, what does he pay it for? He gets nothing, the land-owner parts with nothing, there is nothing to be paid for.

It is not impossible but that this act goes to the verge of legislative power in authorizing the taking and appropriation of private property without the consent of its owner; but no constitutional question is raised here, and we have only to interpret and apply the act according to its terms.

The first section of the act is as follows: "Any person, or corporation authorized by its charter so to do, may erect and maintain, on his or its own land, or upon the land of another with his consent, a water-mill, and a dam to raise the water for working it, or for creating a reservoir of water, and for equalizing the flow of the same for its use, and of mills below, upon and across any stream not navigable, upon the terms and conditions and subject to the regulations hereinafter expressed." No limitation is made or suggested here, or elsewhere in the act, upon the height to which the water may be raised, or the extent of territory that may be flowed. The right to flow is qualified only by the provisions and conditions found in the succeeding sections. So far as I can see, it is left quite at the option of the dam-builder to determine the extent of the flowage for which he proposes to become liable, according to the provisions of the act. Any other construction leads to the result, that he may be compelled to pay for a thing he does not take and does not want.

Now, suppose these defendants, instead of building a dam with the capacity of raising the water four feet higher than the old one (but provided with gates, &c., whereby they supposed they could so manage as to keep the water on the plaintiff's land at the same height as it would have been kept by the old one), had built a dam without gates or other appliances for controlling the flow of the water, but with just the capacity to raise the water on the plaintiff's land to the same height and keep it there in the same way it has in fact been raised and kept by the present structure, managed as they have managed it, how would the act apply to the case then? and what would be the duty of the committee in assessing the damages? Clearly, as directed by the act, to estimate the damage "that may have been or may be done thereby;" that is, past and prospective damages, based upon the past and intended or proposed future interference with the water.

If, instead of the present dam, the defendants had built one with only the capacity last supposed, that is, the capacity of affecting the water just as it has been, and as they profess they intend it shall be affected by their present dam managed as they have managed it, still,

under the act, they would have had a right at any time to add to the height of such a dam, and so inflict a greater damage on the plaintiff by submerging more of his land, or more completely flowing out his water privilege. What difference does it make that in the construction of their dam they have furnished themselves with the means of exercising a right conferred by the act, at once, without delay, whenever they may determine to pursue that course? The result in one case is reached by increasing the height of the dam, in the other by shutting down a gate already there. I see no warrant for compelling them to pay for what they do not take, and do not purpose to take, in one case any more than in the other.

Undoubtedly, the report and judgment must show what has been taken from one of the parties and conferred upon the other; and the importance of a plain and accurate description of premises conveyed in this way, by visible monuments on the ground, certainly cannot be any less cogent than if the matter were settled by contract between the parties, and the description inserted in a deed. The height and capacity of a given dam is a common instrument wherewith to measure the extent of a water right; and when that is done the dam constitutes the monument whereby the right is most naturally and conveniently described in the conveyance. But other monuments may be and are often adopted. In the case of adjoining riparian owners above and below on the same stream, the monument is the point where the line that divides their land crosses the stream. It may be a mark upon an immovable rock, or anything else provided by the situation of the property, or suggested by the circumstances of the particular case.

In this case the defendants intended to construct their new dam in such way that they could keep the water above it in the same state as it was kept by the old one, and also intended to manage it so as to secure that result. But the event shows that they have not succeeded in fully carrying out their intentions in this respect.

It seems probable that the committee would have been warranted in finding that the future effect of the new dam, managed as the defendants have managed it, and as they say they intend to manage it, might fairly be taken as the measure of the effect it will produce in the future, and so, as a fair measure of the right the defendants are seeking to acquire in the plaintiff's land, and a fair basis upon which to estimate the damages which the defendants should pay. I do not think, however, that can be said as matter of law. It was a question of fact for the committee to decide with all the evidence before them. Suppose the defendants had proposed to insert an iron pin in an immovable rock, or to fix any other monument as the measure of the right of flowage which they sought to acquire: is it not clear that the damage should be assessed upon the basis that the right, so limited and defined, was all that would pass by the proceedings? I think it is;—and then, if the defendants afterwards use their dam in such way as to overstep the bounds thus fixed to mark the extent of their right, they make themselves liable, as it seems to me, not only to an action at common

law for the injury thus done, but also to further proceedings under the statute, if their wrongful acts are of such character as to denote an intention to appropriate additional land for the use of their reservoir or mills.

In a word, my idea is, that, in general, the proprietor of the dam ought to point out to the committee, by some plain, permanent, and appropriate monument on the ground (whether the dam, or something else), the extent of the right he wishes to acquire and pay for. This monument, or other instrument whereby the right is to be measured, should be carefully described by the committee in their report, and damages should be assessed with reference to the right thus limited and defined.

It might happen that the mill-owner at the hearing would desire to stipulate for lowering his dam, or in some other way provide that less land should be flowed or damaged by maintaining it. If such a proposal were made in good faith, and with sufficient guaranties that it would be carried out, I see no reason why it might not be entertained and acted on by the committee. If all the damage that has been done be fairly estimated, and all the damage that will be done in the future, by exercising the right as fixed at the hearing, be also fairly estimated, the land-owner has, apparently, got all he is entitled to under the act. If any bad faith should appear, any attempt on the one hand to get what is not paid for, or, on the other, to recover damages for what is not taken, it is to be presumed that an intelligent committee will know how to deal with any such state of facts, and will see to it that no injustice is done.

The practical operation of the statute seems to be, to force upon the land-owner a compulsory sale of the right to flow as much of his land as the mill-owner chooses to take. The office of the committee, clearly, is, to take care as well that the one shall not be compelled to part with his property for an inadequate price, as that the other be not compelled to take what he does not want, or pay for what he does not take.

I think the report should be recommitted, with instructions to the committee in accordance with these views.

CUSHING, C. J. We learn from the report of the commissioners that the dam designed to be maintained by the defendants is such as not to occasion any flowage beyond the defendants' right to flow at the time the dam was built. I understand from the case, that although the dam is so constructed that it is capable of flowing the lands above it to a greater extent, still, that, by means of roll-ways, sluices, and gates, it is so managed that it does not, in fact, cause any greater flowage than the defendants' right, and that if at any time it has caused a greater flowage than that, such excess has been the result of accident. Now, under these circumstances, it is difficult to see how this proceeding could be maintained at all, for I suppose that the object and intention of the statute were, to provide some means by which the manufacturer could get the needed right to flow, against the will and without

the consent of the owner of the land flowed, but not to compel the manufacturer to take what he does not want.

It does not appear from the report that these defendants desired or intended to flow any land which they had not a right to flow, or to obtain such right to flow in any other way than by negotiation; and it would be hard, and to all appearance unjust, if the plaintiff could be allowed to force upon them the purchase of rights of flowage at an advance of fifty per cent. above the appraised value, when they, in fact, had no intention of putting these statutory powers in motion, or giving others an opportunity to do so.

With these views, it appears to me that the just construction of the statute requires that the flowage which the commissioners have a right to appraise, cannot go beyond that which the defendants' works, as maintained, are designed to effect, including accidental damage which the works so maintained have occasioned, and are liable to occasion. It certainly cannot be extended beyond this last-mentioned damage.

The defendants' dam might probably be so constructed as to furnish a very convenient measure of the flowage right, if the defendants have obtained, or may by this proceeding obtain it; but it is not the only measure. It will be for the commissioners to ascertain the necessary and unavoidable damage occasioned to the petitioner by the dam as maintained by the defendants; and the extent to which the defendants' right to flow shall be carried by the commissioners' appraisal must be indicated by some other permanent and sufficient monument.

If the defendants, by their future management of the dam by closing up the roll-ways and sluices, shall indicate an intention to extend their flowage beyond those monuments, it will of course be open for the petitioner to proceed again under the statute for the further damage sustained. The case of *Griffin* v. *Bartlett*, 55 N. H. 119, and cases there cited, show that the measure of the right to flow is to be determined by the actual extent of the flowage, and not by the height of the dam.

SMITH, J. In rebuilding their dam, the defendants so constructed it that it might be made to flow the plaintiff's land four feet higher than could be done by means of their former dam; but, at the same time, the new dam was so provided with gates and roll-ways, that, when managed as the defendants claim they always have managed them and intend hereafter to manage them, the plaintiff's land has not been and will not be flowed higher than it was before. The fact that the dam was built higher than the former dam is in itself of no consequence, unless it is used to flow the plaintiff's land; and, until that is done, there has been no taking of his property for which they should be adjudged to pay. The committee in their examination should, of course, ascertain whether the dam, as constructed and managed, flows the plaintiff's land higher than the defendants have a right to flow; also, ascertain if the result of their management hitherto has been at times to flow higher than the defendants intended to flow, whether by accident or otherwise; in which event it would be their duty to assess the

damages "that may have been or may be done thereby." But it would be manifestly unjust to compel the defendants to pay for a right to flow when they do not desire to do it, and have so constructed and managed their dam as to avoid that result.

The report of the committee should show, by some convenient and permanent monument, the exact height to which the defendants, by their dam, as constructed and managed, flow the plaintiff's land, so that he may have the means, if the defendants should hereafter elect to avail themselves of the capacity of their dam to flow higher, to show that fact and obtain his damages therefor.

*Case discharged.*