. HOVEY v. PERKINS.

On a mill-owner's petition under the mill act .(Gen. Laws, c. 141, ss. 15–19), the defendant's .title, and the question whether any damage has been or will be done to the defendant's land, may be contested by the plaintiff; and. in pleading, the flowing capacity of the plaintiff's dam may be a sufficient measure and description of the right sought to be taken for public use.

PETITION, by a mill-owner under the flowage act (ss. 15–19, c. 141, Gen. Laws). The petition, among other things, alleges, in substance, that the plaintiff has erected and maintained a mill, and has constructed a dam across the Suncook river in Pittsfield, at a cost of several thousand dollars, and intends erecting other works and mills at a great expense; that said dam is essential for the purpose of rendering the water-power of said river available for the use of such mills and works; that the construction and mainte- nance of said mills and dam, and the raising of water by means of said dam for working said mills and works, and for creating a reservoir of water for equalizing the flow of the same for the use of such mills, is of public use and benefit to the people of this state, and that the same is necessary for the use of the mills for which it is designed; that the defendant "claims to be seized and possess- ed" of a tract of land in said Pittsfield (described in the peti- tion); and that the defendant claims that by said dam said land is overflowed, and the ground and soil thereof are damaged thereby to the amount of $700. Then follow the following allegations: "And the petitioner says that said land is not overflowed by said dam, nor is the ground and soil thereof thereby damaged, nor are the said premises in any way injured thereby; that he was notified of said pretended damage or injury on or about July 1, 1884, and that he has hitherto been unable satisfactorily to adjust the same."

The petition prays for a view and a hearing, that it may be de- termined by said court whether the construction and maintenance of such mill or mills, and the erection of said dam as constructed by the plaintiff's grantor and the plaintiff, and the flowing (if any) of said land thereby to the depth and extent that the same may or can be flowed or otherwise injured by said dam, is or may be of public use or benefit to the people of this state, and whether the same is necessary for the use of the mills already erected or that may be erected, and for which it was designed, and that the dam- ages that have been done or that may be done to said premises (if any) by the construction of said dam may be assessed in accord- ance with the provisions of the statute.

To the petition the defendant demurred, and assigned the fol- lowing causes therefor:

(1) Said petition does not describe, by reference to some plain,

permanent, and appropriate monument on the ground, the nature and extent of the right in the defendant's land that he wishes to acquire and pay for.

(2) Said petition does not sufficiently set out the defendant's title to the premises damaged.

(3) Said petition does not sufficiently set out the right, by reason of which the grievance mentioned therein arises.

(4) Said petition does not sufficiently set out the location of the dam in question.

(5) Said petition does not sufficiently set out the extent of the damages that may be occasioned by said dam

(6) Said petition alleges that the defendant's land is not overflowed by said dam, and that the ground or soil thereof is not damaged thereby, and that the defendant's said premises are not in any way injured by said dam; and these allegations show that the court has no jurisdiction in this case, under the provisions of sections 15 to 19 of chapter 141 of the General Laws.

(7) The petition should describe fully and with certainty the right in the defendant's land which the plaintiff proposes to take, so that the defendant may have notice of what he is called upon to meet, and the record may show the rights that are established by the judgment in the case.

*Chase & Streeter*, for the defendant. I. As to the first, fifth, and seventh causes of demurrer : At the outset, we call special attention to the fact that this petition is by the mill-owner—not the land-owner. He knows what rights he desires to appropriate ; the land-owner does not, only as the mill-owner makes known his wishes. As an agency of the sovereignty of the state, the plaintiff is exercising the right of eminent domain ; he is taking rights from the defendant without his consent, except such consent as results from his citizenship. The state and all its agencies, when exercising this right, should give the party against whom it is exercised full, clear, and definite information of what is taken from him : this is required to prevent wrong being done, intentionally or accidentally. When the right is exercised in taking land for railroad purposes, the law expressly requires such full, clear, and definite information to be given. G. L., *c.* 160, *ss.* 6, 7, 29. In that case, the land is directly appropriated by the party who is to use it, without intervening agencies or hearings, the same as it is under the flowage act. There is the same reason for full, clear, and definite description in the latter case as in the former, and it is equally practicable and convenient to give it.

In *Town* v. *Faulkner*, 56 N. H. 255, 258, *Ladd*, J., says,—"So far as I can see, it is left quite at the option of the dam-builder to determine the extent of the flowage for which he proposes to become liable, according to the provisions of the act." And further on (*p.* 260) he says,—"In a word, my idea is, that, in general, the

proprietor of the dam ought to point out to the committee, by some plain, permanent, and appropriate monument on the ground [whether the dam or something else], the extent of the right he wishes to acquire and pay for. This monument, or other instrument whereby the right is to be measured, should be carefully described by the committee in their report, and damages should be assessed with reference to the right thus limited and defined." That was an action by the land-owner; the mill owner had no opportunity to give in the petition (which is the foundation of the action) a particular description of the rights he desired to appropriate to his own use; and for this reason, probably, the court hold that he shall do it when he gets before the committee, and that they shall incorporate such description in their report. It seems to us it would be a safer and better practice in such cases to require the mill-owner, at the return term of the order of notice upon the land-owner's petition, to file such particular description in the case before it is sent to the committee. By such course, the land-owner would be informed at the outset of what is taken from him, and would be enabled thereby to intelligently and fully prepare for the trial before the committee, a single, certain, and well defined issue would be made up, and the records of the court would be more nearly in accord with its records in other cases, and more certain in the information they furnish. But whatever practice may be established for cases of that kind, we confidently urge that where the mill-owner is the petitioner, he shall be required to give full, clear, and definite description of the rights he appropriates in his petition. Such practice will be no hardship to him, and will enable the land-owner the better to protect his rights and get full compensation therefor.

Another and important reason why the practice above suggested should be adopted in both classes of cases is, that the statute (Gen. Laws, c. 141, s. 17) requires an "issue to the jury to try the facts alleged in said petition, and assess the damages" to be made up upon the election of either party before a reference of the case to a committee. To make up such issue, it is necessary to have, from some source, a full, clear, and definite description of the rights taken. Why not have the same in the petition, when that is made by the party appropriating the rights? In *Pollard* v. *Moore*, 51 N. H. 188, it is held that the petitioning mill-owner cannot become nonsuit after the committee have assessed the damages, and that it is doubtful if he can after a reference of the case to the committee. The decision is put, in part at least, on the ground that the flowage act is designed for his benefit, and if he invokes its aid, he must abide the consequences. The adoption of the practice above suggested would be in accordance with the spirit of this decision, which requires the mill-owner to make up his mind at the start as to what he wants. The law says to him, Take what you need, but having taken it you must pay for it according to law, whether you wish to or not.

The plaintiff's petition does not fully, clearly, and definitely describe the rights he wishes to take from the defendant.   The only description of such rights is by a reference to the dam constructed by him, at a considerable distance below the defendant's land, and that reference is by no means clear and unequivocal.   So far as appears from the petition, the plaintiff's intention may be not to use the dam to its full capacity for holding back the water of the river.   As in *Town* v. *Faulkner*, he may intend to so control and use it that the water shall never rise to its top, or flow back on the defendant's land.   It is not the height of a dam that produces flowage or establishes rights, but the manner in which it is used. *Gilford* v. *Lake Company*, 52 N. H. 262, 265.   If a description by reference to the dam is to be adopted, it should at least be unambiguous.

But we maintain that a fuller, clearer, and more definite description should be given than any that can be made by reference to the dam.   The defendant's land is a long distance above the dam.   It will require expensive surveys to determine *theoretically* how much of his land will be flowed by the dam ; it will require observation, extending through a series of years and all the varying stages of water, to determine *practically* how much will, in fact, be flowed thereby.   The defendant should not be subjected to the expense of surveys or the uncertainties of theories, but the plaintiff should mark out a line on his land to which he proposes to flow, and himself bear all the expenses and risks above suggested.   The plaintiff can so control his dam as not to flow the water upon the defendant's land above the line thus marked out.   In this way certainty is reached, and justice can be done to both parties.   The flowage act requires that the petition shall set out not only "a description of the premises damaged," but also "the extent of the damages that may be occasioned by the dam."   Sec. 16.   It requires all that we ask for above.

II. As to the sixth cause of demurrer : "If the land of any person shall be overflowed, drained, or otherwise injured by the use of such dam," either party may maintain a petition under the flowage act, which shall set forth a description of the premises damaged and the extent of the damages, and which, after notice, shall be referred to a committee "to determine in relation to the matters set forth therein."   Sec. 16.   The committee, after hearing the parties and taking a view, shall estimate the damages if they are of opinion that "the flowing or draining of said land" by the dam is, or may be, of public use or benefit, and that the same is necessary for the use of the mills for which the dam was designed. Sec. 17.   But this petition alleges that the defendant's land is not overflowed, damaged, or in any way injured by the plaintiff's dam. The statute gives the court no jurisdiction of such a case upon such proceedings.   It is only where the land is damaged that the statute gives the court jurisdiction.   If the land is not damaged, the plain-

tiff is well enough without commencing an action of any kind; if the defendant commences an action, he can successfully defend against it, but he cannot force the defendant to litigate that question against his will in a proceeding of this or any other kind. The law assumes that he wants to take a right from the defendant, and knows the extent and limits of that right. When he needs such a right he may appropriate it under the statute, as a railroad may appropriate land for its uses. Before he invokes the aid of this statute, he must determine the right he needs in the same way that the railroad must determine what land it needs before it invokes the aid of the statute in its favor.

III. If the flowage act is constitutional, as seems to have been settled, probably it "goes to the verge of legislative power in authorizing the taking and appropriation of private property without the consent of its owner" (*Ladd*, J., in *Town* v. *Faulkner*, *supra*); and such a practice under it should be established as will be a safeguard against its being administered so as to enable parties to appropriate important rights nominally under its authority, but really beyond the verge of legislative power to authorize. The questions here raised have not been before the court heretofore, so far as we know : they seem to us to be of considerable importance. We trust that a practice will be adopted that shall fully carry out the intention of the legislature as embodied in the flowage act, and at the same time protect private rights against usurpation.

*W. L. Foster* and *E. H. Shannon*, for the plaintiff. Every condition required by the statute to be regarded by a petioner in framing his petition has been complied with in this case. Those conditions are four in number, and no more. The petition shall set out (1) the title and description of the premises damaged; (2) the right, by reason whereof the grievance arises; (3) the location of the dam; (4) the extent of the damages that may be occasioned thereby. Gen. Laws, c. 141, s. 16. The defendant has not pointed out in his brief any exception to the form or substance of the petition in respect to the first three statutory requisites; and his second, third, and fourth causes of demurrer seem to be waived. The first, fifth, and seventh specifications of demurrer are, in substance, identical.

Concerning the fourth requirement of the statute in regard to the petition, "the extent of the damages that may be occasioned thereby," we do not understand the meaning to be that the petitioner shall "set out" the distance or point to which the water may flow or drain the land, but either "the extent of the damages" in pecuniary amount (which he says the defendant claims to be $700), or else the extent to which the mill-owner claims the right to damage the land-owner, namely, so much as he may be damaged by the maintenance of the existing dam. This is sufficiently definite. The petitioner cannot state the extent of damage

more definitely, and there is no reason why he should.   He states his claim as to the right to maintain the existing dam and to impose damages to the extent occasioned thereby, and the defendant's claim that those damages are $700.   The claims of the respective parties being stated in the petition, the committee provided by law (or a jury, upon proper issues framed) will determine "the depth and extent that the [land] may or can be flowed by said dam," and "estimate the damages;" but, for the purposes of the petition, it is sufficient to set out the extent of the damages by reference to such a "plain, permanent, and appropriate monument, on the ground" as the existing dam, at its present height.   The report of the committee or the verdict of the jury with regard to the height of the dam and the extent of the flowage occasioned thereby, with judgment upon such report or verdict, will furnish a record by which the rights of the parties will be definitely ascertained and perpetuated.

A railroad corporation may conveniently locate, by permanent monuments on the ground, a railroad track of a certain prescribed width, and extending in a direction defined by specified courses and distances, between fixed termini; but it is practically impossible, by means of permanent monuments, to mark upon the uneven surface of a crooked and undulating shore the precise extent to which land may be flowed by a dam of a certain height.   And the location of a railroad by permanent monuments is not only practicable and easy, but, being practicable, is essential, in order that land-owners or stockholders may take measures to have it changed. G. L., c. 160, ss. 8, 11.   No such reasons apply to the flowing or drainage of lands by a mill-dam; and therefore the law has provided for the description of the rights assumed, by plain and permanent monuments in the one case and not in the other.   In each case the statute points out with particularity the essential steps and conditions upon which the right of compulsory appropriation depends, and no conditions other than the law creates can be imposed.

The petition in this case is in the precise form, in all particulars, which usage has established.   We have been unable to find, and the defendant's counsel have not pointed out, a case in which greater certainty of description has been required.   In the case cited by the defendant, the court, as we understand their language, seem to regard it as quite sufficient that the extent of the right which the mill-owner desires to acquire and pay for be pointed out "to the committee," upon the hearing, "by some plain, permanent, and appropriate monument on the ground, whether the dam or something else.   *   *   *   This monument or other instrument whereby the right is to be measured should be carefully described by the committee in their report, and damages should be assessed with reference to the right thus limited and defined."   _Town_ v. _Faulkner_, 56 N. H. 255, 260.   The court does not indicate a neces-

sity for a definite description by reference to fixed monuments, either in a petition by either party, or in an answer by a mill-owner to a land-owner's petition.

As to the sixth cause of demurrer. It is not necessary that the plaintiff, in order to avail himself of the rights conferred upon him by the statute, should admit, in his petition, that the defendant has sustained damage. In framing his petition in this respect he has followed the established precedent. He asserts that the defendant claims that his land is overflowed and damaged to the amount of $700; that the defendant has notified the plaintiff of this claim, and that the parties have been unable to adjust it; and, in view of the defendant's claim, the plaintiff prays "that the damages that have been done or that may be done to the said premises, if any, [thereby conceding that it may be that it will be ascertained that damage has been done] may be assessed." It was unnecessary for the plaintiff to deny that the defendant has sustained damage, and his allegation in this respect may be rejected as surplusage. But it does no harm, for it is not the fact of damage done, only, that gives the court jurisdiction, but the possibility and danger that damage may be done in the future. "Either party may apply by petition  *  *  *  to have the damage that may have been [not "that has been"] or may be done thereby, assessed." Section 16. If the land-owner asserts a claim of damage, the law does not intend that the mill-owner shall admit it, or that he shall be kept in a state of uncertainty as to the extent of his rights and liabilities during the indefinite time that the claimant may neglect to sue him.

The following is the form of petition used in *Amoskeag Mfg. Co. v. Head*, 56 N. H. 386, and in other cases:

*To the Superior Court of Judicature for the County of*          . :

The Amoskeag Manufacturing Company complain against

and respectfully represents that said company were duly incorporated by the laws of the state of New Hampshire, by an act passed July 1, 1831, and that in and by the charter of incorporation so granted they were empowered to establish, manage, and carry on the manufacture of cotton, woollen, iron, and other lawful manufactures on or near the Amoskeag falls in Goffstown, and also any and all such branches of manufacture and trade as is necessary to carry on and manage the business of said corporation, and to purchase, take, hold, and convey real and personal estate of every kind to such amount as they may find necessary and convenient in the management of their concerns,—*provided* the same shall not exceed the sum of one million dollars; and the same to manage, improve, change, and sell at their pleasure, and to erect on the real estate to be purchased and held by them, as aforesaid, such dams, canals, mills, buildings, machines, and works as they may

deem necessary or useful in carrying on and managing their manufactures and works, and in conducting the business of the corporation.

That, by an amendment to said charter, passed June 26, 1838, said corporation were authorized to purchase, hold, dispose of, use, and improve any part or the whole of the stock of the Amoskeag Canal Company, or any other canal company at or near Amoskeag falls, on Merrimack river, with all the rights and privileges, and subject to all the liabilities and obligations, appertaining to said companies under their respective charters.

That, when the Amoskeag Manufacturing Company own the whole of the stock of any of the above named companies, the duties of the same may be performed, and the privileges enjoyed, in the name of the Amoskeag Manufacturing Company; and the capital stock allowed for carrying on their business at the Amoskeag falls, in Manchester, was subsequently increased to the amount of three millions of dollars.

That the Amoskeag Canal Company were, by their charter, authorized to construct a dam across the Merrimack river at Amoskeag falls; and that the whole of the stock of the Amoskeag Canal Company is held by the Amoskeag Manufacturing Company, who thereby are entitled to all the powers, rights, and privileges of the Amoskeag Canal Company.

That the Amoskeag Cotton and Woollen Manufacturing Company were, by their charter, authorized to construct any mills and erect any dam across Merrimack river at Amoskeag falls, that they might find useful for carrying on the manufacture of cotton and woollen fabrics; and that the rights, powers, and privileges of the Amoskeag Cotton and Woollen Manufacturing Company are now held by the Amoskeag Manufacturing Company.

That, by an amendment to the charter of said corporation, approved July 3, 1861, it was provided that "whereas, by the original act incorporating the Amoskeag Manufacturing Company, approved July 1, 1831, and by sundry amendments thereto, said corporation were authorized to erect on their real estate such dams and canals as they might deem useful in carrying on and managing their manufactures and works, and to maintain and continue such dams and canals as have heretofore been used or might become necessary for the purpose of navigation, manufactures, or other objects authorized by said act and said amendments thereto; and whereas the said corporation, under the authority of said act and said amendments, have erected and now maintain and use a dam necessary for carrying on and managing their manufactures and works; and whereas no method is provided in said acts and said amendments for assessing and determining the amount of damage that may be caused by taking and using the right so to maintain and use said dam,—therefore, if any person is aggrieved or damaged by the exercise on the part of said company of the rights,

powers, and privileges in regard to said dams and canals conferred by said acts and amendments and used by said corporation, and such damage or grievance shall not be satisfactorily adjusted by said corporation within thirty days after notice thereof, either party may apply by petition to the supreme judicial court in the county where such grievance or damage arises, to have the damages which have been or may be done by said corporation assessed; and in such petition he shall distinctly set out his title to the premises damaged, and his right by reason whereof said grievance arises, and the nature of the injury and the amount and extent of the damages 'that may be occasioned thereby; and said court, after reasonable notice to all persons interested, shall appoint a committee to determine in relation to the matters set forth in said petition. Said committee shall be first duly sworn to the faithful and impartial discharge of their duties, and shall give such notice to the parties as shall be ordered by said court, shall view the premises and estimate the damages, and make report to the said court at the next term thereof, and said court shall render judgment thereon which shall be final."

That said Amoskeag Manufacturing Company, under the authority so granted, have purchased the land on both sides of the Merrimack river at Amoskeag falls, and including the river and falls, and have there erected mills, dug canals, and established works, at a cost of several millions of dollars, and have encouraged others to also erect mills and works at an expenditure of several millions of dollars more, and intend erecting other works and mills at a large expense, and for the purpose of rendering the water-power of said river at said falls available' for the use of such mills and works, have there constructed a dam across said river, and placed flash-boards thereon as part of said dam.

That the construction of said mills and dam, and placing flash-boards thereon to raise the water for working said mills and works, and for creating a reservoir of water, and for equalizing the flow of the same for the use of such mills, is' of public use and benefit to the people of this state, and that the same is necessary for the use of the mills for which it is designed, and for carrying on and managing their manufactures and works.

That                      of                      in the county of            aforesaid, claims to be seized and possessed of a tract of land in            in said county of and that by said dam, so erected with such flash-boards thereon, said land is overflowed, and the ground, grass, and soil of said premises washed away, to the damage of said            as he says, to the amount of         dollars.

And said Amoskeag Manufacturing Company are also informed that said premises are claimed by            of            in said county of            who also claims that the same is in like manner overflowed, and the ground, grass, and soil of said prem-

ises washed away as            claims to         damage the sum
of            dollars.

And said company are also informed that        of       in
claims an interest in said premises by mortgage or        otherwise.

And said Amoskeag Manufacturing Company say that said land
is not overflowed by said dam and flash-boards so erected, nor is
the ground, grass, and soil thereof thereby washed away, nor there-
by are the said premises in any way injured; that they were noti-
fied of said pretended damage or injury more than thirty days be-
fore the date hereof, and that they have been hitherto unable satis-
factorily to adjust the same.

That                     of                        in
the county of                  aforesaid, claims to be seized and pos-
sessed of a tract of land in            in said county of
and that by said dam so erected with such flash-boards thereon,
said land is overflowed, and the ground, grass, and soil of said
premises washed away, to the damage of said       as he says, to
the amount of              dollars.

And said Amoskeag Manufacturing Company are also informed
that said premises are claimed by            of            in said
county of            who also claims that the same is in like man-
ner overflowed, and the ground, grass, and soil of said premises
washed away as                claims to            damage the sum
of                dollars.

And said company are also informed that        of
in            claims an interest in said premises by mortgage or
otherwise.

And said Amoskeag Manufacturing Company say that said land
is not overflowed by said dam and flash-boards so erected, nor is
the ground, grass, and soil thereof thereby washed away, nor there-
by are the said premises in any way injured; that they were noti-
fied of said pretended damage or injury more than thirty days
before the date hereof, and that they have been hitherto unable
satisfactorily to adjust the same.

Wherefore said Amoskeag Manufacturing Company pray that a
committee may be appointed to determine in reference to the mat-
ters set forth in said petition, and that such committee be first
duly sworn to the faithful discharge of their duties, that they give
such notice to the parties as may be ordered by the court, that a
view of said premises be had and the parties heard, and that it
may be determined whether the erection of said dam, with said
flash-boards forming part of the same as constructed by said corpo-
ration, is necessary for the use of the mills and works already
erected or that are designed to be erected and for which it is
designed, and for carrying on and managing the manufactures and
works of said corporation; and what is the nature of the injury,
and that the amount and extent of the damages that have been or
may be done to said premises (if any) by the construction of said

dam and the placing flash-boards thereon as part thereof, may be estimated and report made thereof to said court; and that judgment be rendered thereon, in accordance with the provisions of said amendment.

Amoskeag Manufacturing Company,
*By its Attorney*,

THE STATE OF NEW HAMPSHIRE.

ss.                    *Office of the Clerk of the          Court.*

A. D. 187 .

Upon the filing of the foregoing          It is ordered,          that the said          notify the said of the pendency thereof, and summon          to appear before said court, at a          term to be held at          in the county of within and for said county, on the
Tuesday of          next, to show cause, if any,          why the prayer of said          should not be granted, by causing a certified copy of said          and of this order thereon to be given to, or left at the last and usual place of abode of, the said
days at least before said      .    term of said court, and make return thereof.          Attest :          *Clerk.*

Doe, C. J. The form of the petition is supported by precedent. Some of the cases in which it has been used, without the question of its sufficiency being raised, were strenuously contested. But if it is not a statement of a controversy that can be settled in a suit of this nature, or if on any point of the public claim presented by the plaintiff it does not contain such information as he ought to give, mere precedent does not authorize an infringement of the defendant's substantive or remedial right. The mill act requires "reasonable notice to all persons interested," and provides a method, and a convenient and ample remedy, for an exercise of the public power of eminent domain, that may relieve all persons interested from other litigation on questions of title, tort, and damage. The defendant is entitled to compensation neither for damage that is not to be done (*Town* v. *Faulkner*, 56 N. H. 255), nor for damage to be done to land in which he has no interest, nor for all the damage to be done to land in which his interest is less than the whole title. His title is presumed to be peculiarly within his knowledge; and the plaintiff needs to allege concerning it only what he understands the defendant claims. The statute, construed to accomplish its purpose of ascertaining and establishing a public right in a manner that will inflict no injustice upon either party, does not make it necessary that the plaintiff should either admit a title or a flowage that is disputed, or take a course that would expose him to a preliminary lawsuit. The height of his proposed obstruction of the water is peculiarly within his knowledge, and should be averred and proved by him; and he should

furnish all evidence that can resonably be demanded of him on every question raised by his assertion of the public right to maintain the obstruction. If he admits the defendant will be injured, he should offer proof of the amount of damage. If he denies either title or injury, he should offer such proof as can reasonably be expected from one who affirms such a negative. It is for the court at the trial term to require the plaintiff's performance of the duty he must assume, and to see that the defendant's right of property is not violated by expense wrongfully thrown upon him. The procedure is thoroughly equitable. Either party may be plaintiff. If the defendant had brought the petition, neither party would have been obliged to admit what equity would require his adversary to prove; and the merits of the case are not reversed by the circumstance that the defendant does not ask that determination of the rights of both parties to which each is entitled.

The entire line of a proposed flowage is generally one that cannot be easily marked on the ground, as the bounds of a proposed railroad or other highway may be. Its most accurate and satisfactory description is often based on the height of the dam, or an altitude fixed at some other place. *Town* v. *Faulkner*, 56 N. H. 255, 259, 261. The contracts in *W. L. Co.* v. *Perley*, 46 N. H. 83, and *S. F. Co.* v. *P. Co.*, 46 N. H. 249, 250, 251, 252, are instances of the common practice of adopting a certain level as the most expedient boundary in a conveyance of a flowage right. On payment of the price, a judgment authorizing the plaintiff to flow the defendant's land for public use would be an involuntary conveyance, in which the description of the premises might be such as the parties would probably employ if the conveyance were made without compulsion, and were limited to so much land as is needed. One inquiry may be, whether the flowing of the land "to the depth and extent that the same may or can be flowed by said dam, is or may be of public use." No more can be taken than "is necessary for the use of the mill or mills" for which the dam is designed. For the purposes of the land-owner, the flowing capacity of the dam may be the most useful description of the public claim; and it may be the only practicable measure of what can be taken. This petition does not show that the defendant needs, or that the plaintiff can equitably be required to propose, any other measure. A specification can be ordered at the trial term, if justice requires it; but the public right is not to be unreasonably obstructed by orders not necessary for the defendant's protection.

*Demurrer overruled.*

CARPENTER, J., did not sit: the others concurred.